Duke B. KELLY, Plaintiff-Appellant,

v.

WAUCONDA PARK DISTRICT, a local Governmental Agency of the State of Illinois, Defendant-Appellee.

No. 85–2390.

United States Court of Appeals, Seventh Circuit.

Argued April 10, 1986.

Decided Sept. 12, 1986.

Timothy P. Whelan, Wheaton, Ill., for plaintiff-appellant.

Warren Bo Duplinsky, E.E.O.C., Washington, D.C., amicus curiae.

Daniel R. Warren, Jeffrey D. Colman, Jenner & Block, Chicago, Ill., for defendant-appellee.

Heidi H. Katz, Fawell, James & Brooks, Naperville, Ill., amicus curiae.

Before WOOD and RIPPLE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

HARLINGTON WOOD, Jr., Circuit Judge.

The plaintiff, Duke Kelly, alleges that the Wauconda Park District fired him because of his age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.* The district court granted the defendant's motion to dismiss, finding that the Wauconda Park District was not an "employer" as defined by the ADEA. The district court determined that in passing the 1974 amendment to the ADEA adding states and state political subdivisions to the ADEA Congress did not intend to expose government employers to broader coverage than that of private employers. The issue we must decide is an important one: whether a state or state political subdivision, like a private employer, must employ at least "twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year" to qualify as an "employer" under the ADEA. We affirm the decision of the district court.

Duke Kelly was hired by the Wauconda Park District as a maintenance worker in 1972. His job apparently involved groundskeeping duties in the parks. He

continued in that position until he was fired on February 15, 1983. He filed suit on February 15, 1985, claiming the defendant fired him because of his age.

The Wauconda Park District is an autonomous local government body located in the Village of Wauconda, a town of 5,700 people. It is governed by an elected Board of Commissioners who serve without pay. A special, local property tax, along with revenues from programs and services provided by the Park District, generates all of the Park District's finances. In 1982, the Park District was comprised of less than 18 acres of land and had a total budget of approximately $120,000.

The Park District has only one full-time, year-round employee, Caroline Kelling, who serves both as Director of Parks and Recreation and as Secretary to the Board of Commissioners. According to Kelling's affidavit, which Kelly does not challenge, thirteen employees worked for the Park District in each calendar year 1981 and 1982. Only two of these employees worked five days in each of twenty or more weeks in 1981 and 1982. Between 1981 and 1985, the Park District has never had more than three employees work five days in each of twenty or more weeks in any calendar year.

We thus face squarely the question whether the twenty-employee minimum for ADEA private-entity employers applies to government employers. If it does, then the Wauconda Park District is not an employer for purposes of the ADEA. If it does not, then Kelly may proceed with his age discrimination claim.

The ADEA definition of "employers," 29 U.S.C. § 630(a) & (b), provides:

(a) The term "person" means one or more individuals, partnerships, associations, labor organizations, corpora-

tions, business trusts, legal representatives, or any organized group of persons.

(b) The term "employer" means a person engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.... The term [employer] also means (1) any agent of such a person, and (2) a State or political subdivision of a State and any agency or instrumentality of a State or a political subdivision of a State....

The first issue we must decide is whether the definition of employer in section 630 is ambiguous. If the plain language of the statute is clear, we do not look beyond those words to interpret the statute. *See Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 201, 96 S.Ct. 1375, 1384–85, 47 L.Ed.2d 668 (1976). When the statute's language is ambiguous, we look to the legislative history of the statute to guide our interpretation. *United States v. Tex-Tow, Inc.,* 589 F.2d 1310, 1313 (7th Cir.1978).

■ Kelly argues that, by setting state and political subdivisions in a separate sentence, Congress unambiguously indicated that government employers were a separate category of employers not subject to the twenty-employee minimum. Although Kelly's reading of the statute is certainly a fair and reasonable one, we disagree that the language is capable of only that interpretation.[1] Indeed, Kelly weakens his argument that the statute is unambiguous by arguing that we should look at "common sense" and congressional intent in deciding that the statute is unambiguous.

More significantly, the Park District enunciates another fair and reasonable in-

---

**1.** The Equal Employment Opportunity Commission ("EEOC"), in its *amicus* brief, argues that the two sentences in section 630(b) are written in the disjunctive form and therefore must be given separate meanings. Actually, sentences connected by the word "also" are conjunctive. *See American Heritage Dictionary* 97 (1982). Nevertheless, there are dangers in attempting to rely too heavily on characterizations such as "disjunctive" form versus "conjunctive" form to resolve difficult issues of statutory construction. Although connecting words such as "and," "or," or "also" are often helpful keys to unlocking Congress's intent, we must still look at all parts of the statute.

terpretation of section 630(b)—that Congress, in amending section 630(b), merely intended to make it clear that states and their political subdivisions are to be *included* in the definition of "employer," as opposed to being a separate definition of employer. Under this interpretation, government employers would be subject to the same limits as other employers. Because both Kelly and the Park District present reasonable, but conflicting, interpretations of the plain meaning of section 630(b), we cannot say that the statute is unambiguous. We therefore must look to the legislative history to guide our interpretation. *Tex-Tow,* 589 F.2d at 1313.

■ Judge Kocoras decided that "[t]he legislative history of the 1974 amendment, the similarities between it and a parallel amendment of Title VII, and common sense" all favor the defendant's reading of section 630(b). 612 F.Supp. 1201, 1202–03 (N.D.Ill.1985). Kelly vigorously contests the district court's decision, in particular its reliance on Title VII law. Kelly argues that because Congress used different language in defining employers under Title VII, as opposed to the ADEA, the legislative history of the 1972 Title VII amendment adding government employers to Title VII sheds no light on Congress's intent in passing the 1974 ADEA amendment.[2]

We believe that the district court was correct in giving some consideration to the parallel amendment of Title VII. Senator Bentsen of Texas, the sponsor of the 1974 ADEA Amendment, first proposed the addition in March 1972, at the same time Congress was considering and enacting the amendment to Title VII. *See EEOC v. Elrod,* 674 F.2d 601, 604 (7th Cir.1982). The Supreme Court and our court have recognized "important similarities" in objectives, substantive prohibitions, and legislative histories between the ADEA's protection against age discrimination and Title VII's protection against employment discrimination on the basis of race, sex, or religion. *Lorillard v. Pons,* 434 U.S. 575, 584, 98 S.Ct. 866, 872, 55 L.Ed.2d 40 (1978); *EEOC v. Elrod,* 674 F.2d at 607.

Both statutes originally applied only to private employers with a certain minimum number of employees. The ADEA currently requires twenty employees, while Title VII requires fifteen. *Compare* 29 U.S.C. § 630(b) *with* 42 U.S.C. § 2000e(a) & (b). Kelly does not contest that the language and case law of the 1972 Title VII amendment apply the fifteen-employee minimum to both government and private employers. *See, e.g., Rogero v. Noone,* 704 F.2d 518, 520 (11th Cir.1983).

The Park District, while conceding that Congress did not use identical language in the two amendments, points out that Senator Bentsen, the ADEA amendment's sponsor, explained that the Senate approved the Title VII amendment on the theory "that employees of State and local governments are entitled to the same benefits and protections in equal employment as the employees in the private sector...." 118 Cong.Rec. 15,895 (1972). Senator Bentsen went on to say that "I believe that the principles underlying those provisions in the EEOC bill are directly applicable to the Age Discrimination in Employment Act." *Id.* The district court was therefore correct in deciding that Congress's extension of the ADEA was related to the prior parallel amendment of Title VII.

Moreover, the legislative histories of both the ADEA and Title VII amendments indicate that Congress's main purpose in amending the statutes was to put public and private employers on the same footing. The Senate Special Committee on Aging supported extending the ADEA because "it is difficult to see why one set of rules

---

**2.** The EEOC suggests that the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.,* provides a better parallel for interpreting the ADEA because Congress enacted the amendments to the ADEA and the FLSA together in 1974. This is a non sequitur, however, because, as we noted in *EEOC v. Elrod,* "the connection of the ADEA amendment to the legislation enacting FLSA amendments was largely fortuitous." 674 F.2d at 610. The FLSA has never had a minimum-employee limit for public or private employers, so Congress's intent in amending the FLSA has no bearing on the interpretation of section 630(b).

should apply to private industry and varying standards to government." *See* Special Committee on Aging, U.S. Senate, *Improving the Age Discrimination Law,* at 17 (1973) ("Senate Special Committee Report"). Both the Senate Special Committee on Aging Report and the House Report supporting the ADEA amendment, H.R. Rep. No. 257, 93d Cong., 2d Sess. (1974), recommended adding public employers to the ADEA as well as lowering the minimum number of employees from twenty-five to twenty. Neither report drew any distinction between the coverage of public and private employers. The Senate Special Committee Report stated that the proposed amendments would make the ADEA "more consistent" with Title VII, which covered all employers, public or private, with fifteen or more employees. *See* Senate Special Committee Report, at 3.

Following the 1974 ADEA amendment, Senator Bentsen stated that "[t]he passage of this measure insures that Government employees will be subject to the same protections against arbitrary employment [discrimination] based on age as are employees in the private sector." 120 Cong.Rec. 8768 (1974). This court noted, in *EEOC v. Elrod,* that "[t]he final enactment of the ADEA amendment in 1974 completed coverage of public employees on the same basis as private employees." 674 F.2d at 607.

■ In the face of this evidence that Congress intended section 630(b) to apply the same coverage to both public and private employees, Kelly fails to offer any evidence from the legislative record of the

1974 ADEA amendment which supports his interpretation of section 630(b). He bases his argument entirely upon the difference in language between the 1972 Title VII amendment and the 1974 ADEA amendment. Just because the language of a subsequent statute is not identical to the earlier statute on which it was modeled, we do not necessarily assume that Congress intended to change the meaning. *See, e.g., McElroy v. United States,* 455 U.S. 642, 651 n. 14, 102 S.Ct. 1332, 1338 n. 14, 71 L.Ed.2d 522; *United States v. Moore,* 613 F.2d 1029, 1042–43 (D.C.Cir.1979), *cert. denied,* 446 U.S. 954, 100 S.Ct. 2922, 64 L.Ed.2d 811 (1980). That is particularly true where, as here, Congress gave no indication that it intended to change the meaning. In fact, Kelly concedes that the legislative record does not reveal any reason for the different language. The rest of the relevant legislative history discussed above firmly indicates that Congress intended the ADEA and Title VII amendments to accomplish the same result—subjecting public and private employers to the same employment discrimination coverage. We are not willing, solely on the basis that Congress used different language in the two statutes, to disregard both the evidence that Congress intended the ADEA amendment to parallel the Title VII amendment and the evidence that Congress intended the ADEA amendment to cover public and private employers equally.

Finally, Kelly argues that common sense dictates that the ADEA should impose greater restrictions on governmental employers than private sector employers.[3]

---

**3.** Both Kelly and the EEOC assert, without support, that the twenty-employee minimum for ADEA private employees had a commercial justification—as the EEOC put it, "to protect family or neighborhood 'Mom and Pop' businesses with small incomes from federal government intrusion which would threaten their existence." We question the soundness of this assertion because the congressional record indicates that the minimum was based upon administrative feasibility and the practical consideration that a larger employer with more varied jobs could more constructively utilize an older worker's skills. *See* Hearings on S. 830 and S. 788 Before the Subcomm. on Labor of the Sen. Comm. on

Labor and Public Welfare, 90th Cong., 1st Sess. 47 (1967). Even if we were to accept that commercial reasons played a role in Congress's decision to adopt a minimum-employee standard, it does not necessarily follow that such commercial concerns do not apply to small government entities. As the Illinois Association of Park Districts points out in its *amicus* brief, the Wauconda Park District is typical in size and financial resources to many Illinois park districts which are independent of other larger governmental entities and thus operate on limited budgets. Therefore, even if Congress had based the twenty-employee minimum for private employers on

Kelly cites nothing in the legislative history of section 630(b) to support this assertion. We think common sense dictates that when Congress says it wants the ADEA to have "one set of rules" for both public and private employers, Congress intends the same set of rules to apply to all employers.

We also believe that applying the ADEA to government employers with less than twenty employees would lead to some anomalous results which we do not believe Congress would have intended. For example, Congress has historically viewed the problems addressed by Title VII, racial, sexual, and religious discrimination, to be more serious than the problem of age discrimination. *See EEOC v. Wyoming,* 460 U.S. 226, 231, 103 S.Ct. 1054, 1057–58, 73 L.Ed.2d 18 (1983) (age discrimination rarely based on the sort of animus motivating other forms of discrimination). Congress enacted Title VII first, applied it to the public sector first, and it has always had a lower minimum-employee threshold than the ADEA. Kelly's interpretation, however, would give the ADEA much broader coverage in the public sector than Title VII. We find no support whatsoever in the legislative history for Kelly's position that Congress intended to apply the ADEA to government employers with less than twenty employees.

To summarize, we find that both Kelly and the Park District have advanced fair and reasonable interpretations of the language of section 630(b). We therefore must look to the legislative history of the statute, which we find supports the Park District's reading of the statute, *i.e.,* that the twenty-employee minimum applies to government employers. Because there is no dispute that the Wauconda Park District has never employed twenty employees, the district court's decision to dismiss Kelly's complaint is

AFFIRMED.

commercial considerations, Kelly has failed to demonstrate why that requires us not to apply

the twenty-employee minimum to public employers.