FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JOHN GUIDO; DENNIS RANKIN,
*Plaintiffs-Appellants*,

v.

MOUNT LEMMON FIRE DISTRICT,
*Defendant-Appellee.*

No. 15-15030

D.C. No.
4:13-cv-00216-JAS

OPINION

Appeal from the United States District Court
for the District of Arizona
James Alan Soto, District Judge, Presiding

Argued and Submitted December 15, 2016
San Francisco, California

Filed June 19, 2017

Before: Diarmuid F. O'Scannlain, Ronald M. Gould,
and Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge O'Scannlain

## SUMMARY[*]

### Employment Discrimination

The panel reversed the district court's summary judgment in favor of the defendant fire district, a political subdivision of Arizona, in an action brought by two firefighter captains under the Age Discrimination in Employment Act.

Disagreeing with other circuits, the panel held that a political subdivision of a State need not have twenty or more employees in order to qualify as an employer subject to the requirements of the ADEA. The panel remanded the case for further proceedings.

### COUNSEL

Shannon Giles (argued) and Don Awerkamp, Awerkamp & Bonilla P.L.C., Tucson, Arizona, for Plaintiffs-Appellants.

Jeffrey C. Matura (argued) and Amanda J. Taylor, Graif Barrett & Matura P.C., Phoenix, Arizona, for Defendant-Appellee.

Anne Noel Occhialino (argued), Attorney; Jennifer S. Goldstein, Associate General Counsel; P. David Lopez, General Counsel; Office of General Counsel, Equal Employment Opportunity Commission, Washington, D.C.;

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

for Amicus Curiae Equal Employment Opportunity Commission.

# OPINION

O'SCANNLAIN, Circuit Judge:

We must decide whether the Age Discrimination in Employment Act of 1967 applies to a political subdivision of Arizona.

I

John Guido and Dennis Rankin were both hired in 2000 by Mount Lemmon Fire District, a political subdivision of the State of Arizona. Guido and Rankin served as full-time firefighter Captains. They were the two oldest full-time employees at the Fire District when they were terminated on June 15, 2009, Guido at forty-six years of age and Rankin at fifty-four.

Guido and Rankin subsequently filed charges of age discrimination against the Fire District with the Equal Employment Opportunity Commission ("EEOC"), which issued separate favorable rulings for each, finding reasonable cause to believe the Fire District violated the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–34 ("ADEA"). They then filed this suit for age discrimination against the Fire District in April 2013.

The district court granted the Fire District's motion for summary judgment, concluding that it was not an "employer" within the meaning of the ADEA.

Guido and Rankin timely appealed.

II

Guido and Rankin challenge the district court's conclusion that the Fire District was not an "employer" within the meaning of the ADEA.

A

The ADEA applies only to an "employer." Under 29 U.S.C. § 630(b):

> The term "employer" means a person engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year . . . . The term also means (1) any agent of such a person, and (2) a State or political subdivision of a State and any agency or instrumentality of a State or a political subdivision of a State, and any interstate agency, but such term does not include the United States, or a corporation wholly owned by the Government of the United States.

Under § 630(a):

> The term "person" means one or more individuals, partnerships, associations, labor organizations, corporations, business trusts, legal representatives, or any organized groups of persons.

The parties agree that the twenty-employee minimum applies to "a person engaged in an industry affecting commerce" and that the term "person" does not include a political subdivision of a State. However, they dispute whether the twenty-employee minimum also applies to a "political subdivision of a State." § 630(b).

### B

Congress passed the ADEA to protect older workers from "arbitrary age discrimination in employment."[1] 29 U.S.C. § 621(b). The statute originally applied only to private-sector employers. *See* Special Committee on Aging, U.S. Senate, *Improving the Age Discrimination Law* 11 (1973) (the "Senate Age Discrimination Report"). Congress amended the ADEA in 1974 to extend coverage to States, political subdivisions of States, and other State-related entities by adding a second sentence to § 630(b). Pub. L. No. 93-259, § 28, 88 Stat. 55 (1974) (the "1974 ADEA Amendment").[2]

### 1

Guido and Rankin contend that § 630(b) is not ambiguous and applies to the Fire District. They assert that its plain

---

[1] We "begin [our analysis] with the plain language of the statute." *Negusie v. Holder*, 555 U.S. 511, 542 (2009). If the "statutory text is plain and unambiguous[,]" we "must apply the statute according to its terms." *Carcieri v. Salazar*, 555 U.S. 379, 387 (2009). "Only when statutes are ambiguous may courts look to legislative history." *In re Del Biaggio*, 834 F.3d 1003, 1010 (9th Cir. 2016) (citing *Nakano v. United States*, 742 F.3d 1208, 1214 (9th Cir. 2014)).

[2] The 1974 ADEA Amendment also lowered the employee minimum from twenty-five to twenty.

meaning creates distinct categories of "employers" and that the Fire District fits within one of them. *See Young v. Sedgwick County*, 660 F. Supp. 918, 924 (D. Kan. 1987); *see also EEOC v. Wyoming*, 460 U.S. 226, 233 (1983) ("In 1974, Congress extended the substantive prohibitions of the [ADEA] to employers having at least 20 workers, *and* to the Federal and State Governments." (emphasis added)). Section 630(b), they argue, is deconstructed as follows: The term "employer" means [A—person] and also means (1) [B—agent of person] and (2) [C—State-affiliated entities].

They note that each of the three "employer" categories is then further defined. For example, the "person" category is elaborated upon in § 630(a), which provides multiple definitions of the term "person" and then narrows the category to those persons "engaged in an industry affecting commerce who has twenty or more employees for each working day."[3] The "State-affiliated entities" category lists the various types of State-affiliated entities covered, such as a "political subdivision of a State," and also contains clarifying language.

a

They argue that the ordinary meaning of "also" supports the notion that there are three distinct categories. *See Crawford v. Metro. Gov't of Nashville & Davidson Cty.*, 555 U.S. 271, 276 (2009). We agree. The word "also" is a term of enhancement; it means "in addition; besides" and

---

[3] Agents of persons and political subdivisions are not defined as persons in § 630(a), thus explaining why they have to be included as separate definitions of employers in § 630(b).

"likewise; too." *E.g.*, Webster's New Collegiate Dictionary 34 (1973). As used in this context, "also" adds another definition to a previous definition of a term—it does not clarify the previous definition. *See Holloway v. Water Works & Sewer Bd. of Town of Vernon*, 24 F. Supp. 3d 1112, 1117 (N.D. Ala. 2014) (concluding the twenty-employee limitation should not be imported into the definition of employer covering political subdivisions of a state); *see also Johnson v. Mayor & City Council of Baltimore*, 472 U.S. 353, 356 (1985) ("[I]n 1974 Congress extended coverage to Federal, State, and local Governments, *and* to employers with at least 20 workers." (emphasis added)).

For example, imagine someone saying: "The password can be an even number. The password can also be an odd number greater than one hundred."[4] These are two separate definitions of what an acceptable password can be, and the clarifying language does not apply to both definitions. If the sentences are reversed,[5] the "greater than one hundred" limiting language would still not carry over to the second sentence discussing even numbers. *See Holloway*, 24 F. Supp. 3d at 1117. This becomes more obvious when it would be

---

[4] If someone said "a password can be any even number," the ordinary meaning of this sentence would be that an odd number cannot be a password. *See, e.g.*, *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) (concluding that a statute that states a bankruptcy trustee has the right to recover but is silent regarding an administrative claimant should be read as not giving such claimant the same right); Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 107 (discussing the *expressio unius est exclusio alterius* canon) (2012).

[5] I.e., "The password can be an odd number greater than one hundred. It can also be an even number."

illogical to carry clarifying language over. If a statute said "The word bank means 'the rising ground bordering a lake, river, or sea' and the word also means 'a place where something is held available,'" the second definition would not be describing a place that must border a lake, river, or sea. Merriam-Webster, https://www.merriam-webster.com/ dictionary/bank. The phrase "also means" indicates that a second, *additional* definition is being described. *See* § 630(b) (using the phrase "also means").

b

The EEOC, as amicus curiae, expressing its views in support of Guido and Rankin, contends that the English language provided Congress many ways to apply clarifying language across multiple definitions of a term, had it wanted to. The EEOC cites the 1972 amendment to Title VII of the Civil Rights Act of 1964 as an example (the "1972 Title VII Amendment"). This amendment extended Title VII protections to States and State-related entities, including political subdivisions of a State. Pub. L. 92-261, § 2, 86 Stat. 103 (codified as 42 U.S.C. § 2000e). The EEOC emphasizes that the 1972 Title VII Amendment used language making clear that the twenty-employee minimum applied to political subdivisions, stating:

> (a) The term "person" includes one or more individuals, *governments, governmental agencies, political subdivisions*, labor unions, partnerships, associations, corporations, legal representatives, mutual companies, joint-stock companies, trusts, unincorporated organizations, trustees, trustees in cases under Title 11, or receivers.

> (b) The term "employer" means a person engaged in an industry affecting commerce who has fifteen or more employees . . . .

42 U.S.C. § 2000e (emphasis added). The EEOC argues that Congress knew how to use language to ensure that an employee minimum applied to political subdivisions when it wanted.[6] Congress could have also added the limiting language to each definition discussed in § 630(b), or at least to the definition covering political subdivisions, but it chose not to.[7]

---

[6] Congress could have made the second sentence of § 630(b) the second sentence of § 630(a), not changed a word, and the twenty-employee minimum would clearly apply to political subdivisions. It would then have read as follows:

> (a) The term "person" means one or more individuals, partnerships, associations, labor organization, corporations, business trusts, legal representatives, or any organized group of persons. *The term also means (1) any agent of such a person, and (2) a State or political subdivision of a State and any agency or instrumentality of a State or a political subdivision of a State, and any interstate agency, but such term does not include the United States, or a corporation wholly owned by the Government of the United States.*

> (b) The term "employer" means a person engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year . . . .

[7] Section 630(a)–(b) does such for private sector employers, defining "person" broadly—including labor organizations, partnerships, and business trusts—then defining the term employer to mean a person with at least twenty employees. That structure ensures that the twenty-

2

In the face of such a strong textual argument, the Fire District has a powerful rebuttal: four other circuits have considered this issue and all have declared § 630(b) to be ambiguous. *Cink v. Grant County*, 635 F. App'x 470, 474 n.5 (10th Cir. 2015); *Palmer v. Ark. Council on Econ. Educ.*, 154 F.3d 892, 896 (8th Cir. 1998); *E.E.O.C. v. Monclova Twp.*, 920 F.2d 360, 363 (6th Cir. 1990); *Kelly v. Wauconda Park Dist.*, 801 F.2d 269, 270 (7th Cir. 1986).**[8]** *Cink*, *Palmer*, and *Monclova Township* all rely entirely on *Kelly*'s reasoning regarding the statute's ambiguity.**[9]**

The Seventh Circuit in *Kelly* concluded the statute was ambiguous. While acknowledging that the categorical reading was a reasonable one, it concluded the plaintiff "weaken[ed]

---

employee minimum limitation applies to all definitions of the term "person." § 630(b).

**[8]** Further, every circuit to consider the question of whether the twenty-employee minimum applies to the "agent" category has concluded that § 630(b) is ambiguous. *See Miller v. Maxwell's Int'l Inc.*, 991 F.2d 583, 587 (9th Cir. 1993) (concluding Congress just intended "to incorporate respondeat superior liability into the statute"); *Stults v. Conoco, Inc.*,76 F.3d 651, 655 (5th Cir. 1996); *Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 510 (4th Cir. 1994).

**[9]** *Cink* analyzes the entire interpretation question in two sentences, adopting the reasoning of *Kelly* and the other circuits. 635 F. App'x at 474 n.5. *Palmer* concludes § 630(b) is ambiguous with one sentence of analysis, adopting the reasoning of *Schaefer v. Transportation Media, Inc.*, which itself had adopted the reasoning of *Kelly*. 859 F.2d 1251, 1254 (7th Cir. 1988) (citing *Kelly*, 801 F.2d 269). *Monclova Township* also adopts *Kelly*'s reasoning about the provision being ambiguous without adding anything to the analysis. 920 F.2d at 362–63.

his argument that the statute is unambiguous by arguing that we should look at 'common sense' and congressional intent in deciding that the statute is unambiguous." 801 F.2d at 270. It is not clear to us why an appeal to "common sense" undermines this argument. Further, any appeal to congressional intent is a non-sequitur; it is not a factor that should affect the determination of whether a statute's plain meaning is ambiguous. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 391 (2012).

The *Kelly* opinion further supports its conclusion by stating that the defendant presented a reasonable alternative construction:

> More significantly, the Park District enunciates another fair and reasonable interpretation of section 630(b)—that Congress, in amending section 630(b), merely intended to make it clear that states and their political subdivisions are to be *included* in the definition of 'employer,' as opposed to being a separate definition of employer.

*Id.* at 270–71. Since the alternative reading was also deemed reasonable, the court concluded the statute was ambiguous. *Id.* at 270.

A serious problem with the alternative interpretation argument, however; is that the court in *Kelly* never explained how it is a "fair and reasonable interpretation" of the statute's actual language. A statute must be "susceptible to more than one reasonable interpretation" to be ambiguous. *Alaska Wilderness League v. E.P.A.*, 727 F.3d 934, 938 (9th Cir.

2013). But, declaring that multiple reasonable interpretations exist does not make it so. None of the cases cited by the Fire District elaborate on how and why this alternative interpretation is a reasonable one—they simply declare it so.

As a matter of plain meaning, the argument that § 630(b) can be reasonably interpreted to include its second sentence definitions within its first is underwhelming. If Congress had wanted to include the second sentence definitions of employer in the first sentence, it could have used the word "include" or utilized one of the other alternative constructions described above. The word "also" is not used in common speech to mean "includes." Webster's New Collegiate Dictionary 34 (1973). As previously described, the use of separate sentences and the word "also" combine to create distinct categories, in which clarifying language for one category does not apply to other categories. *See United States v. Rentz*, 777 F.3d 1105, 1109 (10th Cir. 2015) ("[U]ntil a clue emerges suggesting otherwise, it's not unreasonable to think that Congress used the English language according to its conventions."). Even the Supreme Court defaults into the categorical approach when discussing the statute. *E.g.*, *Wyoming*, 460 U.S. at 233; *Johnson*, 472 U.S. at 356.

3

We are persuaded that the meaning of § 630(b) is not ambiguous. The twenty-employee minimum does not apply to definitions in the second sentence and there is no reason to depart from the statute's plain meaning. *See Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004) ("It is well established that when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms."). We are

satisfied that our reading comports with *Lamie* and certainly does not threaten to destroy the entire statutory scheme. *See King v. Burwell*, 135 S. Ct. 2480, 2495 (2015) (preventing the destruction of the statutory scheme may justify departing from "the most natural reading of the pertinent statutory phrase"). Courts should rarely depart from a statute's clear meaning because it risks creating a perception that they are inserting their own policy preferences into a law. *See id.* at 2495–96 (citing *Palmer v. Massachusetts*, 308 U.S. 79, 83 (1939)). Here, there is no valid justification to depart from the plain meaning of the language and to adopt another interpretation.

C

Even if we agreed with the Fire District and concluded that the statute is ambiguous—which we do not—the outcome would not change. The best reading of the statute would be that the twenty-employee minimum does not apply to a political subdivision of a State. We reject the Fire District's contention that considering the legislative history *Kelly* reviewed should lead us to an alternative interpretation.

After concluding that the statute is ambiguous, *Kelly* relied on "the parallel [1972] amendment of Title VII" and the legislative history around the 1974 Amendment to conclude "that Congress intended section 630(b) to apply the same coverage to both public and private employees." 801 F.2d at 271–72. *Kelly*'s focus on divining congressional intent, rather than determining the ordinary meaning of the text, led it astray. *See Meacham v. Knolls Atomic Power Lab.*, 554 U.S. 84, 102 (2008) ("We have to read [the ADEA] the way Congress wrote it."); Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* 391 (critiquing those who

think "that the purpose of interpretation is to discover intent"). We need not read minds to read text.

Both parties argue that the 1972 Title VII Amendment supports their position. But, critically, Congress used different language than it used in the 1974 ADEA Amendment, which changes the ADEA's meaning relative to Title VII, and such Congressional choice must be respected. *See Univ. of Tex. SW Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2528–29 (2013). If Congress had wanted the 1974 ADEA Amendment to achieve the same result as the 1972 Title VII Amendment, it could have used the same language.

Nor does the legislative history *Kelly* relies on address the specific question before us. *Kelly*, 801 F.2d at 271–72. It references a Senate report written a year before the bill was passed discussing how the same set of rules should apply to the private sector and the government. *Id.* (citing Senate Age Discrimination Report at 17). The Senate report never states that the twenty-employee minimum should apply to political subdivisions, but it does "urge that the law be extended . . . to include (1) Federal, State, and local governmental employees, *and* (2) employers with 20 or more employees." Senate Age Discrimination Report at 18 (emphasis added). It also cites a House report containing the same vague language about ensuring the same rules apply and two floor statements by Senator Bentsen, one of which occurred in 1972, arguing that the amendment is needed so that government employees receive the "same protection." *Id.* (citing H.R. Rep. No. 93-913 (1974); 118 Cong. Rec. 15,895 (1972); 120 Cong. Rec. 8768 (1974)).

Eventually, the *Kelly* court resorted to arguing that given its perception of Congressional intent, Congress could not

have intended what it said. 801 F.2d at 273 ("We also believe that applying the ADEA to government employers with less than twenty employees would lead to some anomalous results which we do not believe Congress would have intended."). However, there are plenty of perfectly valid reasons why Congress could have structured the statute the way it did.[10] In any event, it is not our role to choose what we think is the best policy outcome and to override the plain meaning of a statute, apparent anomalies or not. *See Michigan v. Bay Mills Indian Cmty.*, 134 S. Ct. 2024, 2033 (2014).

III

The district court erred in concluding that the twenty-employee minimum applies to political subdivisions; it does not. Therefore, the order granting summary judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**

---

[10] One can imagine policy reasons for all these choices. Perhaps Congress thinks that government agencies, even very small ones like the Fire District, can better bear the costs of lawsuits than small private-sector businesses or that government should be a model of non-discrimination.