**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

HUI RAN MU,

*Petitioner*,

v.

WILLIAM P. BARR, Attorney General,

*Respondent*.

Nos. 16-71292
16-73561

Agency No.
A056-496-104

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted May 14, 2019
Portland, Oregon

Filed September 4, 2019

Before: N. Randy Smith, Paul J. Watford,
and Ryan D. Nelson, Circuit Judges.

Opinion by Judge N.R. Smith

# SUMMARY*

## Immigration

Granting in part and denying in part Hui Ran Mu's petitions for review of decisions of the Board of Immigration Appeals, the panel held that derivative beneficiaries of an alien entrepreneur in the immigrant investor program (EB-5 program), who receive conditional legal permanent residence status, have the right to seek review of the denial of the I-829 petition to remove the conditions on their permanent residence status and, therefore, the agency erred in not reviewing the denial of Mu's father's petition.

When Mu's father was granted conditional lawful permanent residence as an EB-5 investor, Mu and her mother (who is not a party to this case) were granted conditional lawful permanent residence as derivative beneficiaries. Mu's father submitted an I-829 petition to remove the conditions on their permanent residence, but the United States Citizenship and Immigration Service denied the petition and terminated the family's conditional status.

The family was then placed in removal proceedings, and Mu's father was later removed in absentia. After the immigration judge ordered Mu removed to China, Mu appealed to the BIA, arguing that the IJ erred in failing to review the denial of the I-829 petition. However, the BIA concluded that only the principal petitioner (Mu's father)

_____

* This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

could seek review of the denial of the I-829 petition before the IJ.

The panel held that the plain language of 8 U.S.C. § 1186b(c)(3)(D)—which provides that "any alien" whose conditional permanent resident status has been terminated after the denial of an I-829 petition may request review of such determination in a removal proceeding—unambiguously establishes that Congress did not intend to limit such review to the alien entrepreneur. Thus, the panel concluded that the agency erred in not reviewing the denial of her father's petition.

The panel also concluded that the agency did not abuse its discretion in denying Mu's request for a continuance, explaining that, although the BIA did not expressly address the factors set forth in *Ahmed v. Holder*, 569 F.3d 1009 (9th Cir. 2009), the IJ sufficiently outlined why good cause did not exist, and the BIA relied on the IJ's reasons in concluding that the denial was not clearly erroneous.

Finally, the panel concluded that the BIA did not abuse its discretion in denying Mu's motion to reconsider. The panel rejected Mu's assertion that the BIA should have considered new evidence she submitted on appeal, explaining that the BIA is not required to consider new evidence on appeal and that a motion for reconsideration does not permit review of new evidence.

**COUNSEL**

Christopher W. Helt (argued), The Helt Law Group LLC, Chicago, Illinois, for Petitioner.

Carmel A. Morgan (argued), Trial Attorney; Shelley R. Goad, Assistant Director; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

**OPINION**

N.R. SMITH, Circuit Judge:

Derivative beneficiaries of an alien entrepreneur in the immigrant investor program (EB-5 program), who receive conditional legal permanent resident ("LPR") status, are entitled to the same review rights in removal proceedings as the alien entrepreneur. 8 C.F.R. § 216.6(d)(2). Thus, in removal proceedings, an immigration judge's ("IJ") failure to review the denial of an I-829 petition (even though the alien is a beneficiary of the petition) is error.

**I. Administrative Framework**

"The immigrant investor program, or EB-5 program, established by the Immigration and Nationality Act ('INA'), allows aliens to receive permanent resident status upon the investment of a specified amount of capital and the creation of at least ten full-time jobs in the United States." *Spencer Enters., Inc. v. United States*, 345 F.3d 683, 686 (9th Cir. 2003) (citing 8 U.S.C. § 1153(b)(5)). "The purpose of the EB-5 Program is to promote the immigration of people who

can help create jobs for U.S. workers through their investment of capital into the U.S. economy." EB-5 Adjudications Policy (PM-602-0083), 2013 WL 2387747, at *1 (Dep't of Homeland Security May 30, 2013). "In applying for an EB-5 visa, an alien entrepreneur must submit an I-526 petition" establishing that he or she has met the required criteria. *Spencer Enters.*, 345 F.3d at 686. After approval of the I-526, the alien entrepreneur, the alien spouse, and the alien child may enter the United States as conditional LPRs. *Chang v. United States*, 327 F.3d 911, 916 (9th Cir. 2003); *see also* 8 U.S.C. § 1186b(a), (f). Thereafter, the "EB-5 requires the [alien entrepreneur] to file a second petition, an 'I-829,' between 21 and 24 months after the first petition." *Chang*, 327 F.3d at 916; *see also* 8 C.F.R. § 216.6(a)(1). Normally, the alien entrepreneur includes his alien spouse and alien child in the I-829 petition. *See* 8 C.F.R. § 216.6(a). However, in some circumstances, the spouse or child may file his or her own I-829 petition. *See id.* Thereafter, the United States Citizenship & Immigration Service ("USCIS") "approve[s] the I-829 petition, and grant[s] unconditional LPR status, if it finds that the [alien entrepreneur] made no material misrepresentations in the I-526 petition and complied with the EB-5 requirements." *Chang*, 327 F.3d at 916 (citing 8 C.F.R. §§ 204.6, 216.6).

On the other hand, if the USCIS denies the I-829 petition, the director "shall provide written notice to the alien of the decision and the reason(s) therefor, and shall issue an order to show cause why the alien should not be deported from the United States." 8 C.F.R. § 216.6(d)(2). At that time, the conditional LPR status of the alien entrepreneur, the alien spouse, and the alien child is terminated. *See id.*; 8 U.S.C. § 1186b(c)(3)(C). No appeal is available from the denial of the I-829; however, the alien (whose LPR status was

terminated) may request review of the denial in his or her removal proceedings. 8 C.F.R. § 216.6(d)(2). At that time, the agency has the burden "to establish by a preponderance of the evidence that the facts and information in the alien's petition for removal of conditions are not true and that the petition was properly denied." *Id.*

## II. Procedural History & Facts

In 2002, Yankui Mu (Mu's father) applied for and was granted conditional LPR status as an EB-5 investor. *See* 8 U.S.C. § 1153(b)(5). In 2004, Yankui, Ling Zhi (Mu's mother), and Mu conditionally entered the United States as LPRs under the EB-5 program. All three were considered conditional LPRs, though Mu and her mother (who is not a party to this petition) were derivative beneficiaries of Yankui Mu. Two years later (as required by statute), Mu's father filed an I-829 petition[1] on his behalf and that of his family. The USCIS denied the petition, because Mu's father failed to demonstrate the job creation requirements for the EB-5 program were met or would be met in a reasonable amount of time. *See* 8 U.S.C. § 1186b(b). As a result of the I-829 denial, the USCIS terminated the conditional status of Yankui Mu, Ling Zhi, and Mu on May 21, 2007. Thereafter, the Department of Homeland Security ("DHS") issued a Notice to Appear, charging Mu (and her parents) with removability, based on the termination of their conditional status.

In January 2008, Mu appeared with her parents before an IJ. They admitted the factual allegations in the Notice to

---

[1] An I-829 Form is filed to remove conditions on permanent resident status. If the I-829 is denied, the conditional LPR status is terminated and removal proceedings are initiated. *See* 8 U.S.C. § 1186b.

Appear and conceded removability. In March 2009, Mu's father failed to appear at the scheduled hearing and was removed in absentia.[2]

Because Mu's father was removed in absentia, the IJ asked Mu and her mother to brief the issue of whether they had standing to challenge the I-829 denial.[3] However, in January 2014 (during the scheduled merits hearing), the IJ did not address whether Mu had standing to challenge the I-829 denial or whether the I-829 petition was properly denied. Instead, the IJ addressed only Mu's request for a motion to continue. The IJ denied Mu's request for a continuance (1) to file another Form I-526 (a previous application having been denied) and (2) to obtain her passport to show her departure dates from the United States. The IJ then issued its decision, denying Mu's request for voluntary departure and ordering her removed to China.

Mu appealed to the BIA, arguing that the IJ erred in failing to review the denial of the I-829 petition and in denying her voluntary departure. Mu submitted her passport with her appeal to establish her eligibility for voluntary departure. The BIA dismissed Mu's appeal, concluding that, under 8 C.F.R. § 216.6(d)(2), only the principal petitioner (Mu's father) may seek review of the denial of the I-829 petition before an IJ. The BIA also concluded that the entry of the final order of removal against Mu's father constituted an abandonment of his claims; thus the I-829 petition was

---

[2] At that time, neither Mu nor her mother seemed to know the location of Mu's father.

[3] The IJ subsequently severed Mu's case from her mother's case, because Mu's mother had remarried and had a pending I-130 petition.

unreviewable. The BIA lastly concluded that the IJ did not err in denying Mu a continuance or in finding her ineligible for voluntary departure.

Mu timely petitioned this court to review the BIA's decision and filed a motion to reconsider with the BIA. In the motion for reconsideration, Mu argued that the BIA should have accepted her passport as evidence that she was eligible for voluntary departure. She also again asserted that an IJ should have reviewed the USCIS's I-829 decision.

The BIA denied the motion for reconsideration. The BIA concluded that Mu's arguments were previously made and rejected, or that they were raised for the first time on appeal. Mu timely petitioned this court to review the BIA's denial. The two petitions are now consolidated for this appeal.

### III. Discussion

**A. *The BIA erred in finding that Mu lacked standing (as a derivative beneficiary) to challenge her father's I-829 denial.***

"We review BIA determinations of purely legal issues regarding the INA de novo." *Federiso v. Holder*, 605 F.3d 695, 697 (9th Cir. 2010). In interpreting statutes, we defer to the agency only if the statute is ambiguous. Thus, "we first determine if there is any ambiguity in the statute using traditional tools of statutory interpretation." *Id.* "We may not accept an interpretation clearly contrary to the plain meaning of a statute's text." *Id.*

"[O]ur job is to interpret the words consistent with their 'ordinary meaning at the time Congress enacted the statute.'"

*Wisconsin Cent. Ltd. v. United States*, 138 S. Ct. 2067, 2070 (2018) (alteration omitted) (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979)).  To determine whether we should defer to an agency's construction of a statute, we apply the procedure outlined by *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43 (1984).  First, we determine "whether Congress has directly spoken to the precise question at issue.  If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."  *Id.*  Second, if "Congress has not directly addressed the precise question at issue," then we must determine "whether the agency's answer is based on a permissible construction of the statute."  *Id.* at 843.

Following this precedent, we begin with the plain language of the applicable statute, 8 U.S.C. § 1186b(c)(3), to determine whether a derivative beneficiary has standing to challenge the denial of an I-829 petition.  *See Eleri v. Sessions*, 852 F.3d 879, 882 (9th Cir. 2017).  The statute provides in relevant part:

### (C) Termination if adverse determination

If the Attorney General determines that such facts and information [in the I-829 petition] are not true, the Attorney General shall so notify the alien involved and, subject to subparagraph (D), *shall terminate the permanent resident status of an alien entrepreneur, alien spouse, or alien child* as of the date of the determination.

**(D) Hearing in removal proceeding**

> *Any alien whose permanent resident status is
> terminated under subparagraph (C)* may
> request a review of such determination in a
> proceeding to remove the alien.   In such
> proceeding, the burden of proof shall be on
> the Attorney General to establish, by a
> preponderance of the evidence, that the facts
> and information described in subsection (d)(1)
> and alleged in the petition are not true with
> respect to the qualifying commercial
> enterprise.

8 U.S.C. § 1186b(c)(3) (emphases added).

There is no ambiguity in the plain language of this statute;
Congress has directly spoken to the issue.   Congress's use of
the phrase "[a]ny alien whose permanent resident status is
terminated" was not intended to limit review to the alien
entrepreneur.   Even though (1) an alien entrepreneur is the
driving force in bringing over his or her alien spouse and any
alien children and (2) the removal of the conditional basis is
generally tied to the alien entrepreneur, the statute's plain
language does not bind the alien spouse or alien child to the
alien entrepreneur for review purposes in removal
proceedings.[4]  Nor does the statutory scheme as a whole seem

---

[4] The statute does not require that the alien entrepreneur and his or her
family be placed in the same removal proceedings.   *See* 8 U.S.C.
§ 1186b(c)(3)(D) ("Any alien whose permanent resident status is
terminated under subparagraph (C) may request a review of such
determination *in a proceeding to remove the alien*." (emphasis added));
*see id*. § 1186b(c)(2)(B) ("*In any removal proceeding* with respect to an
alien whose permanent resident status is terminated under subparagraph

to indicate that Congress intended to limit who could request review.

The term "any" is defined as "concerning a being or thing of the sort named, without limitation as to which." Oxford English Dictionary (2d 1989); *see also Any*, Merriam-Webster, http://www.merriam-webster.com/dictionary/any (last visited August 13, 2019) (defining any as "one, some, or all indiscriminately of whatever quantity"). By its own terms, "any" is not limited to one being or thing (i.e., the alien entrepreneur). The surrounding provisions reinforce this interpretation, as it limits "any alien" to those who have had his or her "permanent resident status terminated." Because the termination of the permanent resident status is not limited to the alien entrepreneur, an interpretation that "any alien" is limited to "alien entrepreneur" would render the additional qualifier superfluous. *See United States v. Neal*, 776 F.3d 645, 652 (9th Cir. 2015) (We "interpret the statute as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous." (alterations omitted)).

Throughout the statute, Congress used the term "any alien" in the context of termination and removal. In § 1186b(b)(2) and § 1186b(c)(3)(D), the statute allows "[a]*ny alien* whose permanent resident status is terminated," to request a review of the termination. The statute does not define "any alien." *See* § 1186b. However, it does limit "any alien" to the alien entrepreneur, the alien spouse, and the alien

(A), the burden of proof shall be on the alien to establish compliance with the conditions of paragraphs (1)(A) and (1)(B)." (emphasis added)).

child, "whose permanent residence status is terminated." *See* § 1186b(b)(1)(C), (c)(3)(C).

Congress specifically used "any alien" when discussing removal proceedings; whereas it used "alien entrepreneur" when it defined the alien entrepreneur's obligations under the statute.[5] *Compare* 8 U.S.C. § 1186b(c)(1) *with* 8 U.S.C. § 1186b(c)(2)(B). Congress unambiguously meant that the different classes of aliens have different rights and responsibilities under these provisions. This reading is clear from the text and context of the statute.

This broader interpretation is also supported by 8 U.S.C. §§ 1186a and 1227(a)(1)(D). First, under § 1186a,[6] the statute similarly provides that "*any* alien" spouse or child has standing to challenge the termination of his or her conditional permanent resident status. *See* §§ 1186a(b)(2), (c)(3)(D). Second, § 1227(a)(1)(D)[7] provides that "[*a*]*ny alien*" whose conditional "permanent resident status" has been terminated (under either §§ 1186a or 1186b) is deportable. Again, it is

---

[5] Congress similarly extended review to the alien entrepreneur, alien spouse, and alien child in § 1186b(c)(2)(B) (even though it uses the term "an alien" and "the alien" rather than "any alien"). Section 1186b(c)(2)(B) provides that an alien entrepreneur, alien spouse, or alien child may establish that the EB-5 requirements were met (even though they were requirements only of the alien entrepreneur).

[6] Section 1186a is applicable to alien spouses who entered the United States through a qualifying marriage, such as a spouse of a United States citizen, as a fiancée or fiancé of a United States citizen, or as a spouse of an LPR. 8 U.S.C. § 1186a(h)(1). An alien child enters into the United States based upon the foregoing "qualifying marriage." *Id*. § 1186a(h)(2), (3).

[7] Section 1227 outlines the list of deportable aliens.

clear that Congress's unambiguous intent was that these provisions apply to "*any alien*" regardless of whether the alien is the principal alien or the beneficiary. If Congress wanted to limit review to just an "alien entrepreneur," it could have done so. The phase "any alien" should not have several different meanings. Because Congress's intent was clear, we need not reach the second step of *Chevron*.[8]

Even if we were to give deference to the government, 8 C.F.R. § 216.6(d)(2) does not actually make these suggested limitations.[9] Instead, § 216.6(d)(2) explains that, after denial, "[t]he alien's lawful permanent resident status and that of his or her spouse and any children shall be terminated as of the date of the director's written decision." Further, "the alien may seek review of the decision in deportation proceedings." *Id.* At first blush, "the alien" may apply only to the alien entrepreneur. However, although § 216.6(a)(1) allows for the "entrepreneur's spouse and children" to be included in the alien entrepreneur's Form I-829, "[c]hildren who have reached the age of twenty-one or

---

[8] The government asserts that the term "any alien" is ambiguous, in part, because the "statutory scheme requires the alien entrepreneur, in most circumstances, to file the petition to remove conditions." Even though the government's argument may be logical and has some appeal, ambiguity cannot be created where none exists in the plain language of the statute. *See Guido v. Mount Lemmon Fire Dist.*, 859 F.3d 1168, 1173 (9th Cir. 2017), *cert. granted*, 138 S. Ct. 1165 (2018), and *aff'd*, 139 S. Ct. 22 (2018) (noting that "declaring that multiple reasonable interpretations [of a statute] exist does not make it so").

[9] The government also cites to 8 C.F.R. § 103.3(a)(1)(iii)(B), which provides that an "affected party" excludes a "beneficiary of a visa petition." However, that regulation is not applicable here, because it applies to appeals, *see id.*, which are excluded from I-829 denials, *see* 8 C.F.R. § 216.6(d)(2).

who have married during the period of conditional permanent residence and the former spouse of an entrepreneur, who was divorced from the entrepreneur during the period of conditional permanent residence, may be included in the alien entrepreneur's petition or may file a separate petition." *Id.* In other words, under the plain language of the regulation, the twenty-one-year-old alien child who filed his or her own I-829 petition would be "the alien" that could seek review. However, under the government's reading, the same twenty-one-year-old alien child who was included in the alien entrepreneur's I-829 petition could not seek review, even though the facts underlying either I-829 petition would be identical. Thus, even under the agency's own regulation, it seems "the alien" cannot be so limited. It is illogical to suggest that this twenty-one-year-old alien child should have different rights to seek review depending on whether that individual chose to file his or her own petition.[10]

Nothing in § 1186b suggests that the phrase "any alien" is limited to the alien entrepreneur. Thus, Mu had the right to seek review of the I-829 denial, and the agency erred in not reviewing the denial of her father's I-829 petition.[11]

---

[10] This provision makes even less sense when applied to a divorced alien spouse. The government's reading would give more rights to a divorced alien spouse than those of an alien spouse.

[11] The government also argues that Mu's father's effective abandonment of his review of the I-829 denial preludes her from challenging the I-829 denial in the first instance. As discussed, the plain language of the statute does not require that a petition for review is limited to an alien entrepreneur. Thus, we need not address this argument. Nor do we need to address Mu's petition appealing the denial of her motion to reconsider as to this issue.

**B.  *The BIA did not fail to apply the applicable standard
of review to an IJ's denial of a continuance.***

Before the IJ, Mu requested voluntary departure; to support her application for voluntary departure, she requested a continuance to allow her time to present evidence (specifically her passport).  The IJ denied the request to continue, and the BIA affirmed.[12]

To determine whether the BIA abused its discretion in denying a motion to continue, we look to the factors set forth in *Ahmed v. Holder*, 569 F.3d 1009, 1012 (9th Cir. 2009). The *Ahmed* factors "includ[e]: (1) the nature of the evidence excluded as a result of the denial of the continuance, (2) the reasonableness of the immigrant's conduct, (3) the inconvenience to the court, and (4) the number of continuances previously granted." *Id.* "[T]he BIA abuses its discretion when it fails to state its reasons and show proper consideration of all factors when weighing equities and denying relief." *Id.* at 1014 (citation omitted).

In this case, the IJ noted that (1) Mu was informed on February 11, 2013, through counsel, "that her hearing on January 9, 2014 would be on the status of the I-526, and if it was denied [Mu] was to be prepared to file and state any and all relief before the Court"; (2) in January 2014, Mu "stated

---

[12] Mu did not petition for the review of the merits of the IJ's denial of post-conclusion voluntary departure; instead, she only argued that the IJ abused its discretion in denying the motion to continue to allow her to establish eligibility.  Thus, she waived any challenge to the merits of whether she was eligible for voluntary departure. *See Martinez-Serrano v. INS*, 94 F.3d 1256, 1259–60 (9th Cir. 1996).  Therefore, because the denial of the motion to continue was not an abuse of discretion, Mu is not eligible for post-conclusion voluntary departure.

that she would be seeking no other relief other than post-conclusion voluntary departure"; (3) Mu was allowed additional time during the hearing for her counsel to inform her of the requirements of voluntary departure; and (4) "[i]t is [Mu's] burden to show that she is eligible for post-conclusion voluntary departure, and by her own admission she left the United States in 2007 during the summer months and returned to either China or Singapore."  The IJ then denied the motion, concluding that no good cause existed to continue the matter.

Although the BIA did not expressly address the *Ahmed* factors, the IJ sufficiently outlined why good cause did not exist.  *See Cui v. Mukasey*, 538 F.3d 1289, 1292 (9th Cir. 2008) ("The question whether denial of a continuance in an immigration proceeding constitutes an abuse of discretion cannot be decided through the application of bright-line rules; it must be resolved on a case by case basis." (citation omitted)).  In concluding that the IJ's decision was not clearly erroneous, the BIA relied upon the IJ's statement of reasons. *See Tekle v. Mukasey*, 533 F.3d 1044, 1051 (9th Cir. 2008). Beyond the fact that this case had been continued for over six years,[13] the IJ's conclusion that Mu did not meet the required one-year of continual residence (based on Mu's own admissions) is sufficient for the IJ to have reasonably denied the continuance. *See* 8 U.S.C. § 1229c(b)(1)(A). Further, Mu did not challenge this conclusion in her opening brief. *See Martinez-Serrano*, 94 F.3d at 1259–60 (noting that issues not

---

[13] From the time of the I-829 denial until Mu's merits hearing, Mu and her mother were granted several continuances.

raised in the opening brief are deemed waived). Thus, there was no abuse of discretion in this case.[14]

**PETITIONS FOR REVIEW GRANTED, in part, DENIED, in part.** The parties shall bear their own costs on appeal.

---

[14] The BIA did not abuse its discretion in denying Mu's motion to reconsider. *See Lara-Torres v. Ashcroft*, 383 F.3d 968, 972 (9th Cir. 2004), *amended sub nom. Lara-Torres v. Gonzales*, 404 F.3d 1105 (9th Cir. 2005) (standard of review). Mu asserts that the BIA should have considered her passport, which she submitted on appeal to establish eligibility for post-conclusion voluntary departure. However, the BIA is not required to consider new evidence presented on appeal. *See* 8 C.F.R. § 1003.1(d)(3)(iv) (The BIA "will not engage in factfinding in the course of deciding appeals."). Further, a motion for reconsideration does not permit review of new evidence, such as Mu's passport, to establish a factual basis for relief. *See Socop-Gonzalez v. INS*, 272 F.3d 1176, 1180 & n.2 (9th Cir. 2001) (en banc) (contrasting motions to reopen with motions for reconsideration).