**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ALASKA WILDERNESS LEAGUE;
CENTER FOR BIOLOGICAL
DIVERSITY; NATURAL RESOURCES
DEFENSE COUNCIL; NORTHERN
ALASKA ENVIRONMENTAL CENTER;
PACIFIC ENVIRONMENT; RESISTING
ENVIRONMENTAL DESTRUCTION ON
INDIGENOUS LANDS; SIERRA CLUB;
THE WILDERNESS SOCIETY,
                    *Petitioners*,

v.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY,
                    *Respondent*,

SHELL OFFSHORE INC.,
          *Respondent-Intervenor*.

No. 12-71506


OPINION

On Petition for Review of an Order of the
Environmental Protection Agency
Environmental Appeals Board

Argued and Submitted
May 21, 2013—Anchorage, Alaska

Filed August 15, 2013

Before: A. Wallace Tashima, Richard C. Tallman,
and N. Randy Smith, Circuit Judges.

Opinion by Judge N.R. Smith

## SUMMARY[*]

### Environmental Law

The panel denied a petition for review of a decision of the United States Environmental Protection Agency denying a challenge to a Clean Air Act permit that allowed Shell Offshore Inc. to conduct "pollutant emitting activities" associated with the drill vessel *Kulluk* in the Beaufort Sea off Alaska's North Slope, and granted Shell a requested exemption of 500 meters surrounding the *Kulluk* from "ambient air" regulations.

As a threshold matter, the panel held that the EPA's decision, which included its interpretation of the Clean Air Act's 42 U.S.C. § 7661c(e), was entitled to *Chevron* deference. The panel held that the EPA reasonably concluded that Shell need not analyze the *Kulluk*'s potential impact on the Clean Air Act's "increment" requirements before obtaining an oil exploration permit. The panel also upheld the EPA's exemption of a 500-meter radius surrounding the *Kulluk* from "ambient air" quality standards because the decision was a permissible application of the EPA's regulations.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

Colin C. O'Brien (briefed and argued), Earthjustice, Anchorage, Alaska; Eric P. Jorgensen, Earthjustice, Juneau, Alaska, for Petitioners.

Ignacia S. Moreno and Angeline Purdy (briefed and argued), Assistant Attorneys General, United States Department of Justice, Environment and Natural Resources Division; Alexander Fidis, Office of Regional Counsel, Region 10, United States Environmental Protection Agency; David Coursen, Office of General Counsel, United States Environmental Protection Agency, for Respondent.

Duane A. Siler, Sarah C. Bordelon, and Tony G. Mendoza, Crowell & Moring LLP, Washington, D.C.; Kathleen M. Sullivan (briefed and argued), William B. Adams, and David S. Mader, Quinn Emanuel Urquhart & Sullivan, LLP, New York, New York, for Respondent-Intervenor.

Samuel B. Boxerman, Jim Wedeking, and Lisa E. Jones, Sidley Austin, LLP, Washington D.C.; Mara E. Zimmerman, American Petroleum Institute, Washington, D.C., for Amicus Curiae American Petroleum Institute.

Cameron M. Leonard, Senior Assistant Attorney General, Office of the Attorney General of Alaska, Fairbanks, Alaska, for Amicus Curiae State of Alaska.

**OPINION**

N.R. SMITH, Circuit Judge:

42 U.S.C. § 7661c(e) is ambiguous as to whether "increment" requirements are "applicable" to a temporary source like Shell Offshore, Inc.'s ("Shell") drill vessel *Kulluk.* Accordingly, we defer to the EPA Environmental Appeals Board's ("EAB") reasonable interpretation of § 7661c(e). *See Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984). The EAB reasonably concluded that Shell need not analyze the *Kulluk*'s potential impact on increment before obtaining an oil exploration permit. We also deny the petition for review of the Environmental Protection Agency's ("EPA") exemption of a 500-meter radius surrounding the *Kulluk* from ambient air quality standards, because the decision was "a permissible application of the EPA's regulations." *See Resisting Envtl. Destruction on Indigenous Lands, REDOIL v. EPA*, 716 F.3d 1155, 1158, 1160–61 (9th Cir. 2013).

**FACTS AND PROCEDURAL HISTORY**

**A. Statutory and Regulatory Background**

The Clean Air Act (the "Act") imposes responsibility on both federal and state regulators to control and improve the nation's air quality. *Alaska, Dep't of Envtl. Conservation v. EPA*, 298 F.3d 814, 816 (9th Cir. 2002) (citing 42 U.S.C. §§ 7401–7671q). "The Act requires states to submit for the EPA's approval a state implementation plan ['SIP'] that provides for attainment and maintenance of the national ambient air quality standards ('NAAQS') promulgated by the EPA." *Id.* Title V of the Act, 42 U.S.C. §§ 7661–7661f,

requires certain sources, including sources operating only temporarily in a given location, to obtain permits to assure compliance with the Act.  *See* 42 U.S.C. § 7661c.

In "clean air areas," the Act imposes additional preconstruction permitting requirements under the Prevention of Significant Deterioration program (the "PSD").  *Alaska Dep't*, 298 F.3d at 816 (citing 42 U.S.C. §§ 7470–7492).  The PSD imposes increment standards to maintain air quality in clean air areas by preventing the total pollution from exceeding a certain level over an established baseline for the given region.  *See Great Basin Mine Watch v. EPA*, 401 F.3d 1094, 1096 (9th Cir. 2005).  Temporary sources may be subject to increment standards under 42 U.S.C. § 7661c(e), which reads, in pertinent part:

> The permitting authority may issue a single permit authorizing emissions from similar operations at multiple temporary locations. No such permit shall be issued unless it includes conditions that will assure compliance with all the requirements of this chapter at all authorized locations, including, but not limited to, ambient standards and compliance with any applicable increment or visibility requirements under part C of subchapter I of this chapter.

At issue here is whether there are increment requirements "applicable" to the *Kulluk* under § 7661c(e) and the PSD.

Also relevant to this appeal, the Act requires the EPA to regulate, through national quality standards, "ambient air," "which is the statute's term for the outdoor air used by the

general public." *Train v. Natural Res. Def. Council, Inc.*, 421 U.S. 60, 65 (1975). EPA-promulgated regulations define "ambient air" as "that portion of the atmosphere, external to buildings, to which the general public has access." 40 C.F.R. § 50.1(e). Interpreting these statutes and regulations, the EPA has long exempted from the definition of ambient air "the atmosphere over land owned or controlled by the source and to which public access is precluded by a fence or other physical barriers." Letter from Douglass M. Costle, EPA Administrator, to Senator Jennings Randolph, Chairman of the Environment and Public Works Committee (Dec. 19, 1980) (the "Costle Letter").

## B. EPA's Grant of Shell's Permit and Alaska Wilderness's Challenge

To comply with Title V, Shell sought and obtained three related permits in 2011. At Shell's request, the EPA subsequently consolidated the permits into one permitting document (the "Permit"). The Permit allows Shell to construct, operate, and conduct "pollutant emitting activities" associated with the *Kulluk* in the Beaufort Sea off Alaska's North Slope. Before issuing the Permit, the EPA released a Statement of Basis. The Statement of Basis provided that the EPA would not require Shell to analyze the effect its emissions would have on the increment for the *Kulluk*'s area of operation. During the public comment period on the Permit, commenters took issue with this decision and the EPA's rationale in the Statement of Basis. The EPA's Response to Comments, issued contemporaneously with the Permit, addressed these concerns. The EPA concluded that increment analysis was unnecessary, because, under § 7661c(e) and the other relevant statutes, no increment requirements were "applicable" to the *Kulluk*.

The Permit and Response to Comments also announced the EPA's decision to grant Shell's requested exemption of 500 meters surrounding the *Kulluk* from "ambient air" regulations. The Permit conditioned the exemption on the establishment of a U.S. Coast Guard "safety zone" and a "public access control program" to restrict public access to the waters within 500 meters of the *Kulluk*.

Alaska Wilderness raised the increment and ambient air issues, among others, in its challenge of the Permit before the EAB. Alaska Wilderness contended that the EPA misinterpreted "applicable increment" under § 7661c(e). Alaska Wilderness argued that EPA's "source-based" interpretation erred by applying increment standards to temporary sources only if the PSD would impose increment standards on a similar stationary source. Alaska Wilderness maintained a "geography based" interpretation—that increment requirements are "applicable" to all sources any time they are established for the geographic area. Alaska Wilderness also argued that the "ambient air" exemption was inconsistent with the Costle Letter, because Shell did not own and could not, by physical barrier, exclude the public from accessing the space. In a 100-page decision (the "EAB Decision"), the EAB rejected both challenges. With respect to the increment issue, the EAB held:

> Increments . . . are not directly imposed by [§ 7661c(e)]. Instead, they must be implemented (i.e., applied to a source) through either of two means: (1) a state implementation plan, per [§ 7471] and 40 C.F.R. § 51.166(a)(1); or (2) the PSD major source permitting program, per [§ 7475(a)(3)(A)] and 40 C.F.R. § 52.21.

> Thus, while [§ 7661c(e)] can serve as the direct source of NAAQS compliance requirements and other [Clean Air Act] requirements for temporary sources, it only imposes PSD increment requirements to the extent such requirements are "applicable" to the source.

Alaska Wilderness's timely petition (the "Petition") for review of the EAB Decision followed.

## STANDARD OF REVIEW

As a threshold matter, we reject Alaska Wilderness's argument that the EAB Decision is not entitled to *Chevron* deference. "[*Chevron*] generally sets forth the framework by which we review an agency's interpretation of a statute." *Sierra Club v. EPA*, 671 F.3d 955, 961 (9th Cir. 2012). "*Chevron* deference is appropriate where the agency can demonstrate that it has the general power to make rules carrying the force of law and that the challenged action was taken in exercise of that authority." *Id.* at 962 (internal quotation marks omitted).

Here, "Congress explicitly granted to the EPA the authority to promulgate regulations and grant air permits" for the *Kulluk*'s operating region. *REDOIL*, 716 F.3d at 1161. The EPA exercised its "authority through a formal process that included . . . public notice and comment . . . and [a] reasoned EAB decision[ ] upholding the air permits at issue." *Id.* As we have already held in *REDOIL*, the EAB proceeding was "a formal adjudication that warrants *Chevron* deference." *Id.*

"Under [*Chevron*'s two-step] framework at the first step we determine 'whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court as well as the agency, must give effect to the unambiguously expressed intent of Congress.'" *Sierra Club*, 671 F.3d at 961–62 (quoting *Chevron*, 467 U.S. at 842–43). "'[I]f the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 962.

## DISCUSSION

### A. Increment

The parties do not dispute that the *Kulluk* is a "major source" under Title V and, thus, subject to that title's permitting requirements. Further, the parties agree that our analysis of § 7661c(e) must focus on the EPA's interpretation of "applicable increment . . . requirements." It is also undisputed that the *Kulluk* is not a "major emitting facility" under the PSD. *See* 42 U.S.C. § 7479(1). If it were, then the parties agree that 42 U.S.C. § 7475(a)(3)(A) would require a preconstruction increment analysis under the EPA's interpretation set forth in the EAB Decision.

Although the *Kulluk* is not a "major emitting facility," Alaska Wilderness argues that § 7661c(e) (and the other relevant statutes) unambiguously support its position. Alaska Wilderness argues that § 7661c(e) mandated a preconstruction increment analysis for the *Kulluk*, because increments have been established for the *Kulluk*'s operating region. The EPA maintains that § 7661c(e) did not require an increment analysis for the *Kulluk*. The EPA argues that

whether increment requirements are "applicable" under § 7661c(e) (which incorporates the PSD by reference) is a function not only of *geography*, but also a function of whether the PSD would require an increment analysis for the specific *source* if it were stationary. Thus, EPA argues, the *Kulluk* does not trigger the analysis requirement, which the PSD imposes only if required by the state SIP or if the source is a "major emitting facility" under 42 U.S.C. § 7475.

### 1. *Chevron* Step One

A statute is ambiguous if it is susceptible to more than one reasonable interpretation. *See Ariz. Health Care Cost Containment Sys. v. McClellan*, 508 F.3d 1243, 1253 (9th Cir. 2007); *A-Z Int'l v. Phillips*, 179 F.3d 1187, 1192 (9th Cir. 1999); *see also Putnam Family P'ship v. City of Yucaipa*, 673 F.3d 920, 928 (9th Cir. 2012) ("A statute is ambiguous if Congress has not directly spoken to the precise question at issue." (internal quotation marks omitted)). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997). Accordingly, we "begin with the plain language of the statute." *Ariz. Health*, 508 F.3d at 1249.

Section 7661c(e) is ambiguous in its use of the term "applicable." To give content to this term, Section 7661c(e) expressly incorporates and relies on "Part C of subchapter I of [Chapter 85]." 42 U.S.C. § 7661c(e). One Part C provision, 42 U.S.C. § 7473, sets forth increment standards generally and makes clear that permissible increment levels are established by geographic area. However, § 7473 does not specify how increments apply to minor, temporary

sources like the *Kulluk*. Section 7473 is also silent as to preconstruction increment analysis and imposes no preconstruction requirements on any source. As such, Alaska Wilderness cannot rely on § 7473 to support its argument that § 7661c(e) unambiguously compels a geography-based reading of the term "applicable."

Two other Part C provisions impose increment requirements based on *source* rather than geography. First, 42 U.S.C. § 7471 incorporates any increment requirements set forth in the governing SIP, making clear that they apply to the sources covered under those state plans. Second, 42 U.S.C. § 7475(a)(3)(A) imposes increment analysis requirements on "major emitting facilities." Under these sections, and Alaska's SIP, no increment requirement would apply to a minor PSD source like the *Kulluk* if it were stationary. Accordingly, because Part C provisions support a source-based reading of "applicable," but allowable increment levels are determined by geographic area, § 7661c(e) is ambiguous.[1]

We reject Alaska Wilderness's argument that the EPA's interpretation renders the different permitting provision of

---

[1] Section 7661c(e)'s express reliance on Part C demonstrates that we cannot, as Alaska Wilderness urges, read § 7661c(e) to unambiguously impose increment requirements over and above those created by Part C. By contrast, the parties do not dispute that § 7661c(e) imposes substantive NAAQS requirements on temporary sources. However, this does not support Alaska Wilderness's increment argument; it only demonstrates the section's ambiguity. The NAAQS that § 7661c(e) references do not incorporate another provision like Part C to determine which requirements are "applicable." Thus, Part C's failure to clarify the interplay between geography and source brings ambiguity to § 7661c(e)'s reference to increment, but has no bearing on the NAAQS.

§ 7661c(a) absurd or superfluous by redundantly applying state SIP requirements. Section 7661c(a), with a broad brush, states that any permit must include conditions to assure compliance with the requirements of the chapter, including SIP requirements. Section 7661c(e) performs a more specific function—setting forth which requirements apply to temporary sources. As such, § 7661c(e) does not duplicate § 7661c(a), even under the EPA's reading. In fact, using Alaska Wilderness's logic, § 7661c(e)'s incorporation of any portion of Part C would be redundant, because Part C is already part of the "chapter" covered by § 7661c(a). Clearly this is not the case. Thus, § 7661c(a)'s reference to SIPs does not foreclose the EPA's interpretation, and Alaska Wilderness cannot resort to § 7661c(a) to clarify § 7661c(e)'s ambiguity.

### 2. *Chevron* Step Two

If an agency interprets an ambiguous statute and "fills a gap or defines a term in a way that is reasonable in light of the legislature's revealed design, we give [that] judgment controlling weight." *Ariz. Health*, 508 F.3d at 1249 (alteration in original) (internal quotation marks omitted). Here, the EPA's interpretation is consistent with Congress's "revealed design" as evidenced by § 7661c(e)'s plain language.[2] In fact, the EPA arguably proffers the more reasonable reading of § 7661c(e) and Part C, given § 7471's

---

[2] Alaska Wilderness cannot rely on § 7661c(e)'s legislative history to support its argument that § 7661c(e) unambiguously compels its geography-based interpretation. Any attempt to invoke § 7661c(e)'s legislative history is inconsistent with Alaska Wilderness's claim that the statute is unambiguous. If the statutory language were truly as clear as Alaska Wilderness argues, "reference to the legislative history would be both unnecessary and inappropriate to illuminate unambiguous text." *REDOIL*, 716 F.3d at 1162–63.

and § 7475(a)(3)(A)'s imposition of increment analysis requirements by source, and given the absence of any such requirement imposed by area under § 7473. Thus, we defer to the EPA's reasonable interpretation.

## B.  Ambient Air

Since briefing was completed in this case, we decided *REDOIL*. We then invited the parties to submit supplemental briefs as to the effect of *REDOIL* on the ambient air issue in this case. After briefing, we agree with the parties that *REDOIL* directly controls this issue. Thus, as in *REDOIL*, we conclude that the EPA's exemption of a 500-meter radius surrounding the *Kulluk* from ambient air quality standards was "a permissible interpretation of its ambient air regulation and earlier letter ruling." *REDOIL*, 716 F.3d at 1165.

## CONCLUSION

Section 7661c(e) is ambiguous, and the EPA's interpretation is reasonable under the applicable statutes' plain language. Thus, we owe *Chevron* deference to the EAB Decision not to require a preconstruction increment analysis for the *Kulluk*. Similarly, as we held in *REDOIL*, the EPA permissibly granted a 500-meter exemption to the *Kulluk* from "ambient air" standards.

**PETITION DENIED**.