**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

J.B.; P.B.,
  *Petitioners-Appellees*,

v.

UNITED STATES OF AMERICA,
  *Respondent-Appellant.*

No. 16-15999

D.C. No.
4:15-cv-04764-YGR

OPINION

Appeal from the United States District Court
for the Northern District of California
Yvonne Gonzalez Rogers, District Judge, Presiding

Argued and Submitted April 12, 2018
San Francisco, California

Filed February 26, 2019

Before: Kim McLane Wardlaw and Jacqueline H. Nguyen,
Circuit Judges, and Solomon Oliver, Jr.,* District Judge.

Opinion by Judge Wardlaw

---

\* The Honorable Solomon Oliver, Jr., United States District Judge
for the Northern District of Ohio, sitting by designation.

## SUMMARY**

---

### Tax

The panel affirmed the district court's order quashing the Internal Revenue Service's subpoena to the California Supreme Court, seeking documents in connection with a tax audit.

Taxpayers J.B and P.B. are an elderly married couple who were selected at random for a compliance research examination, as part of the IRS's National Research Program. In connection with the audit, the IRS issued a summons to the California Supreme Court seeking various documents, and taxpayers filed a petition to quash. The district court concluded that the IRS had not provided sufficient notice to taxpayers that it would contact the California Supreme Court, in violation of I.R.C. § 7602(c)(1)'s requirement that the IRS provide "reasonable notice in advance" to taxpayers.

The panel concluded that "reasonable notice in advance" means notice reasonably calculated, under all the relevant circumstances, to apprise interested parties of the possibility that the IRS may contact third parties, and that affords interested parties a meaningful opportunity to resolve issues and volunteer information before third-party contacts are made. Although the IRS argued that its Publication 1 provided adequate notice, reviewing the totality of the circumstances, the panel agreed with the district court that

---

** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Publication 1 did not provide the requisite reasonable advance notice. The panel explained that a reasonable notice must provide the taxpayer with a meaningful opportunity to volunteer records on his own, so that third-party contacts may be avoided if the taxpayer complies with the IRS's demand.

## COUNSEL

Nathaniel S. Pollock (argued), Robert W. Metzler, and Michael J. Huangs, Attorneys; Caroline D. Ciraolo, Principal Deputy Assistant Attorney General; David A. Hubbert, Acting Assistant Attorney General; Brian Stretch, United States Attorney; United States Department of Justice, Washington, D.C.; for Respondent-Appellant.

Norren Evans (argued), O'Brien Watters & Davis LLP, Santa Rosa, California; Sara Baxter and Joseph Baxter, Santa Rosa, California; for Petitioners-Appellees.

Felipe S. Bohnet-Gomez, Steven T. Miller, and Dean A. Zerbe, Zerbe Miller Fingeret Frank & Jadav LLP, Washington, D.C., for Amicus Curiae Zerbe Miller Fingeret Frank & Jadav LLP.

**OPINION**

WARDLAW, Circuit Judge:

Before the Internal Revenue Service (IRS) summons a taxpayer's financial records from employers, financial institutions, or other third parties, the IRS must provide the taxpayer with "reasonable notice in advance." 26 U.S.C. § 7602(c)(1).[1] Our Circuit has yet to determine what notice amounts to "reasonable notice in advance." *See Estate of Chaiken v. United States*, No. CV 16-80155 MC (DMRx), 2016 WL 8255575, at *5–6 (N.D. Cal. Dec. 27, 2016) (describing intracircuit split). The IRS argues that a "general notice," like its "Publication 1,"[2] suffices in every circumstance. Reaching the opposite conclusion, the district court opined that "the advance notice procedure cannot be satisfied by the transmission of a publication about the audit process generally."

We reject a categorical approach to this question. We conclude that "reasonable notice in advance" means notice reasonably calculated, under all the relevant circumstances, to apprise interested parties of the possibility that the IRS may contact third parties, and that affords interested parties a meaningful opportunity to resolve issues and volunteer information before third-party contacts are made. *See Jones*

---

[1] Because Title 26 of the U.S. Code contains the entire Internal Revenue Code (I.R.C.), we refer interchangeably to Title 26 and the I.R.C.

[2] A version of Publication 1, updated September 2017, is publicly available at https://www.irs.gov/pub/irs-pdf/p1.pdf. The version of Publication 1 that the IRS mailed to J.B. and P.B. is attached as Appendix A.

*v. Flowers*, 547 U.S. 220, 226 (2006) (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (discussing notice due to mortgagee)). Reviewing the totality of the circumstances here, we affirm the district court's order quashing the IRS's 2011 subpoena to the California Supreme Court.[3]

## I.

J.B. and P.B. are an elderly married couple living in northern California. J.B. is an attorney who accepts appointments from the California Supreme Court to represent indigent criminal defendants in capital cases. On July 25, 2013, J.B. and P.B. received a letter in the mail from the IRS, indicating that they had been "selected at random for a compliance research examination." J.B. and P.B., who had already been selected for audits in 2008 and 2009, recognized that the 2011 audit was unlike the 2008 and 2009 audits. The 2011 audit was part of the IRS's National Research Program (NRP), which randomly selects taxpayers for exhaustive audits to help the IRS "better understand tax compliance and improve the fairness of the tax system."[4] Because the NRP is so demanding and so unpopular with taxpayers, Congress discontinued a prior iteration of the

---

[3] Zerbe, Miller, Fingeret, Frank & Jadav LLP's motion for leave to file a brief amicus curiae out of time (ECF No. 39) is **GRANTED**. J.B. and P.B.'s motion requesting leave to file a brief in response to Appellant's response to the amicus curiae brief (ECF No. 53) is **GRANTED**. J.B. and P.B.'s unopposed motion to take judicial notice (ECF No. 56) is **GRANTED**.

[4] Government data suggests that, in 2003, as many as 47,000 taxpayers were selected at random for a NRP audit. *See* U.S. Gov't Accountability Office, GAO-03-614, Tax Administration, IRS Is Implementing the National Research Program as Planned (2003), at 1, https://www.gao.gov/products/GAO-03-614.

NRP, known as the Taxpayer Compliance Measurement Program, in 1988. *A Closer Look at the Size and Sources of the Tax Gap: Hearing Before the Subcomm. on Taxation and IRS Oversight of the Senate Comm. on Finance*, 109th Cong. 3 (2006) (statement of Mark J. Mazur, director of research, analysis, and statistics, IRS). The IRS reinstated the program under its current name in 1998. Internal Revenue Manual (hereinafter IRM) 4.22.1.1.1 (Sept. 6, 2017).

The IRS letter instructed J.B. and P.B. to contact a revenue agent at the IRS to discuss items on their 2011 tax return, as well as the "examination process" and "[a]ny concerns or questions you may have." In the same mailing, the IRS enclosed a two-page notice entitled "Your Rights as a Taxpayer." The IRS refers to this notice as "Publication 1" or "The Taxpayer Bill of Rights." On the second page of the notice, under a heading entitled "Potential Third Party Contacts," the notice warns:

> Generally, the IRS will deal directly with you or your duly authorized representative. However, we sometimes talk with other persons if we need information that you have been unable to provide, or to verify information we have received. If we do contact other persons, such as a neighbor, bank, employer, or employees, we will generally need to tell them limited information, such as your name. . . . Our need to contact other persons may continue as long as there is activity in your case. If we do contact other persons, you have a right to request a list of those contacted.

Two months later, in September 2013, the IRS requested documents from J.B. and P.B.  J.B. and P.B. asked the IRS to excuse them from the NRP audit because of J.B.'s poor health and the couples' advanced age.  J.B. remitted doctor's declarations to the IRS showing that the NRP audit would worsen his hypertension and contribute to hypertensive retinopathy, a deteriorating eye condition, as well as his serious hearing loss.  The IRS refused the couple's request for an exemption, leading J.B. and P.B. to file a separate suit to stop the audit in the Northern District of California in May 2015.  *See* No. CV 15-2138 (YGR) (N.D. Cal.).

Even after J.B. and P.B. filed suit, however, the IRS marched forward with its NRP audit.  In September 2015, the IRS issued a summons to the California Supreme Court seeking "copies of billing statements, invoices, or other documents . . . that resulted in payment to" J.B. for the 2011 calendar year.[5]  The second page of the four-page summons warned that the IRS had the power to "enforce obedience to the requirements of the summons and to punish such person for his default or disobedience."  The penalties for noncompliance included a fine of "not more than $1,000" or imprisonment "not more than 1 year, or both, together with costs of prosecution."

---

[5] The IRS also issued a summons to the California Supreme Court for the 2012 calendar year.  The district court dismissed the petition to quash the 2012 summons as untimely.  Although J.B. and P.B. initially appealed this decision, they voluntarily dismissed their appeal pursuant to Federal Rule of Appellate Procedure 42(b).  J.B. and P.B. concede that the 2012 summons is not at issue in this cross-appeal.  Nor do they challenge the district court's conclusion, on reconsideration, that it did not have jurisdiction to review, in camera, any documents that the California Supreme Court issued in response to the 2012 summons.

J.B. and P.B. did not learn that the IRS had issued the summons until after-the-fact, when J.B. and P.B.'s daughter, whom they had listed as a personal representative, received a notice of service of summons in the mail.[6] In October 2015, the couple filed a timely petition to quash the summons in the Northern District of California.

The district court evaluated J.B. and P.B.'s petition under *Powell v. United States*, 379 U.S. 48 (1964), which sets forth four requirements that the IRS must satisfy to enforce an administrative summons. Under *Powell*, the IRS must establish a prima facie case of good faith by showing that: (1) the underlying investigation is for a legitimate purpose, (2) the inquiry requested is relevant to that purpose, (3) the information sought is not already in the government's possession, and (4) the IRS followed the administrative requirements of the Internal Revenue Code (I.R.C.). *Id.* at 57–58. A court may quash a summons if the resisting party disproves any of the four *Powell* elements or successfully challenges the summons on "any appropriate ground." *Id.* at 58.

Although the district court concluded that the government had satisfied the first three steps of the *Powell*

---

[6] According to the National Taxpayer Advocate, an independent body within the IRS, J.B. and P.B.'s experience receiving notice after a third party has been contacted is becoming more common. In 2015, the IRS did not first ask the taxpayer for documents requested from a third party in 22.8 percent of field examination cases and 11.1 percent of field collection cases. 2015 Nat'l Taxpayer Advocate Ann. Rep. vol. 1, at 128, https://taxpayeradvocate.irs.gov/reports/2015-annual-report-to-congress. In June 2017, the National Taxpayer Advocate identified "third party contacts" as one of thirteen "areas of focus" needed to improve taxpayer rights. 2018 Nat'l Taxpayer Advocate Objectives Rep. to Congress vol. 1, at 98–101, https://www.irs.gov/advocate/reports-to-congress.

test, it found the last step unsatisfied.  The IRS, it concluded, had not provided sufficient notice to J.B. and P.B. that it would contact the California Supreme Court, in violation of I.R.C. § 7602(c)(1)'s requirement that the IRS provide "reasonable notice in advance" to the taxpayer.  The district court rejected the IRS's argument that IRS Publication 1 provided sufficient advance notice, and instead concluded that "the advance notice procedure cannot be satisfied by the transmission of a publication about the audit process generally."  It then instructed that "advance notice should be specific to a particular third party," reasoning that "the implementing regulations contemplate notice for each contact, not a generic publication's reference that the IRS may talk to third parties throughout the course of an investigation."

Because the district court's decision conflicts with the decisions of other district courts in our Circuit, *see Estate of Chaiken*, 2016 WL 8255575, at *6, we must clarify I.R.C. § 7602(c)(1)'s notice requirement for the Circuit.  A district court's ruling on a petition to quash an IRS summons is generally reviewed for clear error.  *Fortney v. United States*, 59 F.3d 117, 119 (9th Cir. 1995) (citing *Tornay v. United States*, 840 F.2d 1424, 1426 (9th Cir. 1988)).  But, here, where the district court "interpreted statutory law," we review de novo.  *Id.* (citing *United States v. Yacoubian*, 24 F.3d 1, 3 (9th Cir. 1994)).

## II.

In connection with the IRS powers to review tax returns and liabilities, § 7602 of the Internal Revenue Code provides for the examination of books and witnesses.  However, § 7602(c) specifically prohibits third-party contacts unless advance reasonable notice is given to the taxpayer.  It specifically provides:

**(c) Notice of contact of third parties.—**

**(1) General notice.—**An officer or employee of the Internal Revenue Service may not contact any person other than the taxpayer with respect to the determination or collection of the tax liability of such taxpayer without providing reasonable notice in advance to the taxpayer that contacts with persons other than the taxpayer may be made.

**(2) Notice of specific contacts.—**The Secretary shall periodically provide to a taxpayer a record of persons contacted during such period by the Secretary with respect to the determination or collection of the tax liability of such taxpayer. Such record shall also be provided upon request of the taxpayer.

**(3) Exceptions.—**This subsection shall not apply –

**(A)** to any contact which the taxpayer has authorized;

**(B)** if the Secretary determines for good cause shown that such notice would jeopardize collection of any tax or such notice may involve reprisal against any person; or

    **(C)** with respect to any pending criminal investigation.

I.R.C. § 7602(c). Section 7602(c) is structured in three parts: a pre-contact notice requirement (§ 7602(c)(1)), a post-contact notice requirement (§ 7602(c)(2)), and exceptions (§ 7602(c)(3)),[7] which apply to both the pre- and post-contact notice requirements. Section 7602(c)(1), the pre-contact notice requirement, is the provision at issue in this appeal.

    We must determine the meaning of the phrase "reasonable notice in advance." We begin the task of statutory interpretation with the text of the statute. *See Yokeno v. Sekiguchi*, 754 F.3d 649, 653 (9th Cir. 2014). "Where the statute's language is plain, the sole function of the courts is to enforce it according to its terms." *Int'l Ass'n of Machinists & Aerospace Workers v. BF Goodrich Aerospace Aerostructurers Grp.*, 387 F.3d 1046, 1051 (9th Cir. 2004) (quoting *United States v. Ron Pair Enters.*, 489 U.S. 235, 241 (1989)) (citation and internal quotation marks omitted). "Only if this approach leaves or reveals ambiguity may we turn to extrinsic evidence such as legislative history." *Yokeno*, 754 F.3d at 653; *see also Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009) ("[O]ur inquiry begins with the statutory text, and ends there as well if the text is unambiguous." (citations omitted)).

    To start, the phrase "reasonable notice in advance" in § 7602(c)(1) is not ambiguous. A term is ambiguous only if it is "susceptible to more than one reasonable interpretation," *Guido v. Mount Lemmon Fire Dist.*, 859 F.3d 1168, 1173

---

[7] No one here argues that any of § 7602(c)(3)'s exceptions applies.

(9th Cir. 2017) (quoting *Alaska Wilderness League v. EPA*, 727 F.3d 934, 938 (9th Cir. 2013)), and "reasonable notice in advance" does not have more than one meaning. The Supreme Court has interpreted "notice" to mean "notice reasonably calculated, under all circumstances, to apprise interested parties" and "afford them an opportunity to present their objections." *See, e.g.*, *Jones*, 547 U.S. at 226. The Court has used the same test to evaluate the adequacy of notice in various circumstances. *See, e.g.*, *id.* (notice due to property owner in advance of tax sale); *Dusenbery v. United States*, 534 U.S. 161, 170 (2002) (notice due to owners of seized cash and automobiles); *Greene v. Lindsey*, 456 U.S. 444 (1982) (notice due to tenants living in public housing); *Mullane*, 339 U.S. at 314–15 (notice due to mortgagee); *accord Low v. Trump University*, 881 F.3d 1111, 1117–22 (9th Cir. 2018) (sufficiency of class notice).

Our interpretation of the phrase "reasonable notice in advance" is supported by the "specific context in which that language is used, and the broader context of the statute as a whole." *Yates v. United States*, 135 S. Ct. 1074, 1082 (2015) (quoting *Robinson v. Shell Oil, Co.*, 519 U.S. 337, 341 (1997)). I.R.C. § 7602 is an exception to the general rule that the IRS must keep taxpayer records confidential. *See* I.R.C. § 6103. Section 7602(a) allows the IRS to disclose information "[f]or the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person . . . or collecting any such liability," I.R.C. § 7602(a), while § 7602(c) protects the taxpayer from unnecessary third-party contacts. As an exception to the general rule that taxpayer records are to be kept confidential, we construe § 7602(a) narrowly in favor of the taxpayer and § 7602(c) broadly as a protective measure. *See A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945).

I.R.C. § 7602(c)(1)'s notice requirement also complements other notice requirements in the Internal Revenue Code, including I.R.C. § 7609(a)(1), which instructs the IRS to provide the taxpayer with a copy of any summons it serves on a third party. While § 7609 gives the taxpayer an opportunity to quash the summons in a federal district court, § 7602(c)(1), in comparison, protects the taxpayer's reputational interest. It gives the taxpayer a meaningful opportunity to resolve issues and volunteer information before the IRS seeks information from third parties, which would be unnecessary if the relevant information is provided by the taxpayer himself. *See* S. Rep. No. 105-174, at 77 (1988), *reprinted in* 1998-3 C.B. 537, 613 (1988); *see also* IRM 4.11.57.2(3) (May 26, 2017) ("The intent behind this statute is to provide the taxpayer, in most cases, with the opportunity to produce the information and documents the Service needs before the Service must obtain the information from third parties."); Third Party Contacts, 67 Fed. Reg. 77,419, 77,419–20 (Dec. 18, 2002) ("[T]hese final regulations enable a taxpayer to come forward with information required by the IRS before third parties are contacted.").

The exceptions to I.R.C. § 7602(c)(1)'s notice requirement further demonstrate that Congress meant for the advance notice provision to provide the taxpayer with a meaningful opportunity to produce information to avoid third-party contacts. I.R.C. § 7602(c)(3) waives the advance notice requirement if (a) the taxpayer already authorized the contact; (b) the Commissioner, with good cause, believes that notice may jeopardize the IRS's tax collection efforts or open a third party to reprisal; or (c) there is a pending criminal investigation against the taxpayer. I.R.C. § 7602(c)(3). These exceptions demonstrate that Congress intended § 7602(c)(1)'s advance notice requirement to give

the taxpayer a meaningful opportunity to respond to the IRS's request; it is only if the taxpayer knows who the IRS plans to contact or the documents that the IRS plans to request that the taxpayer may authorize the contact, or more cynically, impede the contact by jeopardizing tax collection efforts, retaliating against third parties, or interfering in a pending criminal investigation. Publication 1, alone, does not offer this level of specificity. It simply tells the taxpayer that the IRS may "sometimes talk with other persons if we need information that you have been unable to provide . . ."; it does not reference specific documents or people, or even categories of documents or people. When the IRS uses Publication 1 as it was used here, mailed with an introductory letter and divorced from any specific request for documents, we do not think it reasonable for the IRS to fear that a person who received the publication would have enough information to spoil a criminal investigation or retaliate against a potential third-party source.

The IRS counters that I.R.C. § 7602(c)(1) cannot require the IRS to provide advance notice "specific to a particular third party," as the district court held, because that would render superfluous the post-contact notice provision, § 7602(c)(2), which requires the IRS to provide the taxpayer with a "record of persons contacted" after the contact is made. This argument fails for two reasons. First, we do not require the IRS to provide the taxpayer with a list of the people it may contact in advance. Rather, we require what the statute requires: "reasonable notice in advance." I.R.C. § 7602(c)(1). What is reasonable depends on the facts. Second, even if we required the IRS to provide the taxpayer with a list of people it may contact in advance, the IRS's argument nonetheless fails because the group of people covered by the advance notice provision, I.R.C. § 7602(c)(1), is larger than the group of people covered by

the post-contact notice provision, I.R.C. § 7602(c)(2). The advance notice provision covers every third-party contact that the IRS "may" make, while the post-contact notice provision covers only "persons contacted" and excludes every third-party contact where the IRS sent a copy of the third-party summons to the taxpayer. *Cf.* I.R.C. § 7602(c)(1) *with* I.R.C. § 7602(c)(2); *see also* Treas. Reg. § 301.7602-2(e)(4), Ex. 4 (explaining that "providing a copy of the third-party summons to the taxpayer pursuant to section 7609 satisfies the post-contact recording and reporting requirement"). In J.B. and P.B.'s case, for example, the advance notice provision would have required the IRS to notify J.B. and P.B. before contacting the California Supreme Court. But, because J.B. and P.B. received a copy of the summons that the IRS ultimately sent to the California Supreme Court, the IRS would not need to include the California Supreme Court on a list of "persons contacted" if J.B. and P.B. later requested such a list from the IRS. *See* Treas. Reg. § 301.7602-2(e)(4), Ex. 4. Because § 7602(c)(2) covers a different group of contacts, serves a different purpose than § 7602(c)(1), and has its own place in a comprehensive statutory scheme, interpreting § 7602(c)(1) as we do here does not render § 7602(c)(2) superfluous. *See TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (explaining that it is a "cardinal principle of statutory construction" that "a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant" (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001) (internal quotation marks omitted))).

Section 7602(c)(1)'s language could become ambiguous only if we consider the subsection titles, as the IRS urges us to do. The subsection title for § 7602(c)(1) is "General notice" and the subsection title for § 7602(c)(2) is "Notice of

specific contacts." We are unpersuaded, however, that the subsection titles render the actual text of the statute ambiguous. Not only are the titles themselves unclear, but they also contradict the plain meaning of the statute's text, as well as the specific context in which that language is used and the broader context of the statute. Because the statutory text is clear, there is no need to rely on ambiguous subsection headings or other evidence of legislative intent. *See Or. Public Utility Comm'n v. ICC*, 979 F.2d 778, 780 (9th Cir. 1992) ("[While] [t]he title of a statute can be used to resolved [sic] ambiguity," "the title cannot control the plain meaning of a statute." (citing *Bhd. of R.R. Trainmen v. Baltimore O.R.R. Co.*, 331 U.S. 519, 528–29 (1947))); *see also Merit Mgmt. Grp., LP v. FTI Consulting, Inc.*, 138 S. Ct. 883, 893 (2018) ("Although section headings cannot limit the plain meaning of a statutory text, 'they supply cues' as to what Congress intended." (internal citations omitted)).

Even if we were to consider legislative intent, however, we would find ample support for the proposition that Congress intended that the IRS provide notice reasonably calculated to apprise taxpayers that the IRS may contact third parties. Congress added the third-party contact notice requirement to the I.R.C. as part of the Internal Revenue Service Restructuring and Reform Act of 1998 (1998 Restructuring Act), Pub. L. No. 105-206, 112 Stat. 685, 757–58. The notice requirement's proponents were the members of the Senate Finance Committee, which adopted an amendment that prohibited the IRS from contacting "any person other than the taxpayer" unless the IRS provided "reasonable notice to the taxpayer that such contact will be made." H.R. 2676, 105th Cong. § 3417 (as passed by Senate May 7, 1998). The Committee recognized that taxpayer protections needed to be robust because "[s]uch contacts may have a chilling effect on the taxpayer's business and

could damage the taxpayer's reputation in the community." S. Rep. No. 105-174, at 77 (1998), *reprinted in* 1998-3 C.B. 537, 613 (1998).

The joint Conference Committee that considered the different versions of the House and Senate bills preserved the Senate Finance Committee's amendment, but bifurcated it into an advance notice and post-contact notice requirement. The Conference Committee clarified that "in general," the IRS could provide advance notice to the taxpayer "as part of an existing IRS notice provided to taxpayers,"[8] but the Conference Committee did not refer to Publication 1 by name. H.R. Conf. Rep. No. 105-599, at 277 (1998).

The IRS insists that the "existing IRS notice" is Publication 1, but in July 1998, at the time Congress passed the Restructuring Act, the IRS had not yet determined what method it would use to notify taxpayers of potential third-party contacts. *See Status of IRS Reform: Hearing Before the S. Fin. Comm.*, 106th Cong. 69 (Feb. 2, 2000). Tellingly, Congress knew how to refer to Publication 1 by name in the 1998 Restructuring Act when it wished to do so. Congress specifically referred to Publication 1 three times in the 1998 Restructuring Act to, among other things, instruct the Treasury Department to notify taxpayers of their rights in interviews with the IRS. Pub. L. No. 105-206, §§ 1102, 3501–3503; 112 Stat. 685, 703, 770, 771. However, it did not refer to Publication 1 by name in § 7602(c).

---

[8] The IRS contorts this statement in the Conference Committee report to support its claim that "the advance notice requirement contemplates merely general notice." But, other than the headers in the statute, the Conference Committee report makes no mention of general notice.

The timeline for the development of Publication 1 and related forms of notice further illustrates the implausibility of the IRS's insistence that Publication 1 provides "reasonable notice in advance" in all circumstances. After the 1998 Restructuring Act, IRS staff worked with Senate Finance Committee members, all twenty of whom had voted in favor of the Restructuring Act, to implement § 7602(c)(1) in a way that "carries out the intent of the legislation."[9] S. Rep. No. 107-19, at 46, 51 (2001). The IRS first issued Notice 1219,[10] followed by Letter 3164, an even more protective notice.[11] *See* Taxpayer Advocate Service, *2015 Annual Report to Congress*, Vol. 1, 127 n.23. In 1999, when it used Notice 1219, the IRM cautioned that "providing the taxpayer with Notice 1219 alone does not constitute

---

[9] The IRS initially prepared a "broad" notice but did not use it after Senator Christopher Bond, chairman of the Senate Committee on Small Business and Entrepreneurship, wrote to IRS Commissioner Charles Rossotti to tell him that the IRS was "incorrectly implementing the new taxpayer protection." S. Rep. 107-19, at 58 (quoting February 25, 1999 letter).

[10] Notice 1219 stated that the IRS "sometimes talk[s] with other persons when [it needs] information that the taxpayer has been unable to provide, or to verify information [the IRS has] received. This notice is provided to tell you that [the IRS] may contact other persons, such as a neighbor, bank, employer or employees, and will generally need to tell them limited information, such as your name. The law prohibits [the IRS] from disclosing any more information than is necessary to obtain or verify the information [it is] seeking. [The IRS's] need to contact other persons may continue as long as there is activity on this matter. If [the IRS contacts] other persons, you have the right to request a list of those contacted." Notice 1219-B (August 2005).

[11] "There are over twenty versions of the general Letter 3164, available to meet specific functional requirements." IRM 25.27.1.3.1 (October 19, 2017).

adequate notification of third-party contacts.  It must be attached to another letter that contains the required information found in Letter 3164."  IRM 4.10.1.6.12.2.1(5) (May 14, 1999); *see also* IRM 13.1.10.2.3(1) (August 21, 2000) ("Under [§ 7602(c)] you must provide taxpayers with prior notification that third parties may be contacted during the determination or collection of *that specific taxpayer's* federal tax liability." (emphasis added)).  When the IRS started using Letter 3164 more regularly,[12] it developed more than twenty versions of Letter 3164 to meet "specific functional requirements."  IRM 25.27.1.3.1 (Oct. 19, 2017). Some versions of the letter notify the taxpayer, specifically, that the IRS would contact third parties because the taxpayer had not provided certain documents requested in an audit.[13] *See* IRM 4.11.57.4.1.1 (Dec. 20, 2011).  The IRS manual instructs IRS agents to prepare the appropriate letter,[14] include the IRS employee's identification number and telephone number, and deliver the letter to the taxpayer. IRM 25.27.1.3.1(6) (Oct. 19, 2017).

Although they do not say so explicitly, the Treasury Department regulations also support an interpretation of "reasonable notice" that requires meaningful notice to the

---

[12] It is unclear from the record whether the IRS continues to use Letter 3164, or its various versions, today.

[13] For example, Letter 3164-G (no longer in use per IRM 4.11.57.4.1.1 (Dec. 20, 2011)) states "we previously requested the following information from you. . . .  Since you have been unable to provide the requested information, we are writing to tell you that we may contact other persons to obtain this and any related information."

[14] The manual indicates that, "[i]f the tax liability is due to a joint return, each spouse must receive a separate Letter 3164."  IRM 25.27.1.3.1(6)(a) (Oct. 19, 2017).

taxpayer. *See* Treas. Reg. § 301.7602-2 (2002). The regulations state that "the pre-contact notice may be given either orally or in writing," and if written notice is given, it may be given by mail, in person, by delivery to the taxpayer's address, or by confirming receipt by the taxpayer. *Id.* § 301.7602-2(d)(i)–(iv). And, contrary to the IRS's position in this litigation, the regulations nowhere suggest that the IRS satisfies its pre-contact notice requirement by simply mailing Publication 1 to the taxpayer. *See Thompson v. United States*, No. CIV.A. H-08-1277, 2008 WL 4279474, at \*6 (S.D. Tex. Sept. 11, 2008) ("These documents are various methods of providing the 'reasonable advance notice' required by Section 7602(c). No method is specified in the Code.").

Citing to out-of-circuit district court decisions, the IRS nonetheless insists that the district court's decision in this case is an outlier because every court to have considered the issue has held that "IRS Publication 1 satisfied the pre-contact notice requirement." But while courts have generally approved of Publication 1, *see, e.g.*, *Gandrup v. United States*, No. MC 14-123-SLR, 2014 WL 5861719, at \*2 (D. Del. Nov. 12, 2014); *Gangi v. United States*, 2 F. Supp. 3d 12, 21 (D. Mass. 2014), several courts have recognized that § 7602(c)(1) requires a context-dependent inquiry, and have upheld Publication 1 only after evaluating the totality of the circumstances to determine whether the taxpayer received reasonable notice, *see, e.g.*, *Clearwater Consulting Concepts, LLLP v. United States*, No. CV 2007-33, 2010 WL 2392107, at \*7 (D.V.I. Mar. 31, 2010); *Thompson*, 2008 WL 4279474, at \*5–8.

Nor does our decision conflict with the Second Circuit's unpublished summary order in *Highland Capital Management L.P. v. United States*, 626 F. App'x 324 (2d

Cir. 2015), representing the sole other instance of a circuit court's grappling with § 7602(c)(1)'s advance notice requirement. Rather than endorse Publication 1, *Highland Capital* embraces a "totality of the circumstances" approach to determine whether the IRS has complied with all administrative requirements. *Id.* at 327. The Second Circuit reasoned, as we do, that § 7602(c)(1) does not require separate notice before each third-party contact or advance notice of the specific documents that will be requested, but it does require "reasonable notice in advance," and whether notice was reasonable is factually dependent. *Id.* Moreover, in *Highland Capital*, the IRS argued that it had satisfied § 7602(c)(1) in more than one way—by sending Publication 1 in addition to orally notifying the taxpayer during an in-person meeting—so the Second Circuit expressly did not pass judgment on the adequacy of Publication 1 as a stand-alone adequate notification tool. *Id.* at 326–27 ("We conclude, as the District Court did, that regardless of whether Publication 1 satisfies § 7602(c)(1), the oral notice provided to Highland Capital during the January 2014 meeting was sufficient to satisfy that statutory requirement.").

We understand that one result of adopting a context-specific rule may be to make it more difficult for IRS officers, and district courts, to determine whether § 7602(c)(1)'s advance notice requirement is satisfied in any given case. But, to the extent such an administrability problem develops, the responsibility lies with Congress, not the courts. We cannot ignore the text of a statute that hinges the adequacy of notice on a determination of reasonableness. Nor can we ignore the congressional mandate to provide taxpayers faced with a potential third-party summons with a meaningful opportunity to respond with the relevant information themselves so as to maintain their privacy and

avoid the potential embarrassment of IRS contact with third parties, such as their employers.

We therefore hold that Publication 1 did not provide the J.B. and P.B. with reasonable advance notice.**15** A reasonable notice must provide the taxpayer with a meaningful opportunity to volunteer records on his own, so that third-party contacts may be avoided if the taxpayer complies with the IRS's demand.

### III.

The district court concluded that the IRS had failed to satisfy its "administrative duty" of giving J.B. and P.B. a meaningful opportunity to respond before contacting the California Supreme Court, as required by § 7602(c)(1). We agree.

Drawing on our case law in this area, we conclude that the IRS does not satisfy the pre-contact notice requirement, § 7602(c)(1), unless it provides notice reasonably calculated, under all relevant circumstances, to apprise interested parties of the possibility that the IRS may contact third parties, and that affords interested parties a meaningful opportunity to resolve issues and volunteer information before those third-party contacts are made. *See Jones*, 547 U.S. at 226. This standard requires a balancing of the "interest of the State" in

---

**15** Although we limit our holding to the facts of this case, we are doubtful that Publication 1 alone will ever suffice to provide reasonable notice in advance to the taxpayer, as the statute requires. We think it unlikely that the broad and colloquial language in the "Third-Party Contacts" paragraph of Publication 1, which states that the IRS may "sometimes talk with other persons," gives the taxpayer reasonable advance notice that the IRS intends to subpoena, under threat of penalty, third-party documents.

administering an effective auditing system against "the individual interest" in receiving notice of the potential third-party contact and an opportunity to respond. *Mullane*, 339 U.S. at 314. The government must consider "unique information about an intended recipient regardless of whether a statutory scheme is reasonably calculated to provide notice in the ordinary case." *Jones*, 547 U.S. at 230; *see also Robinson v. Hanrahan*, 409 U.S. 38, 40 (1972) (per curiam); *Covey v. Town of Somers*, 351 U.S. 141, 146–47 (1956). And if the government receives information that the notice was not received, the government must take additional reasonable steps to ensure that it provides notice. *Jones*, 547 U.S. at 234.

In this case, the sole notice that the government provided J.B. and P.B. that it might contact the California Supreme Court is Publication 1. The IRS sent J.B. and P.B. Publication 1 as part of its initial, introductory letter to the couple explaining that they had been selected for an audit; an audit the couple sought to stop. The Publication did not accompany a specific request for documents, nor is there any evidence that the IRS revisited the notice later in the audit when it knew that J.B. and P.B. had requested an exemption from the research audit and had not provided documents for the audit. More than two years elapsed between when the IRS sent Publication 1 to J.B. and P.B., and when the IRS subpoenaed the billing records and invoices from the California Supreme Court. We do not think that an agency that actually desired to inform a taxpayer of an impending third-party contact would consider Publication 1 adequate notice in these circumstances.

Nothing about the audit required the government to move quickly. The IRS issued the summons to the California Supreme Court as part of its National Research

Program audit, not an audit in the normal course. The research program is designed to help the IRS improve its tax collection system, but unlike an audit in the normal course where the subjects are selected because of red flags in their tax returns, the subjects of a research program audit are randomly selected, without any reason to believe that they are deficient on their taxes. The IRS had no reason to believe that J.B. and P.B. might evade its review, hide assets, or abscond. Nor was the California Supreme Court going anywhere soon.

Indeed, with a research audit, where the taxpayer is offering information to help the United States in its tax collection efforts, the IRS has every reason to proceed cautiously, ensuring that the taxpayer has adequate notice that the IRS may contact third parties and that the taxpayer's reputational interests are protected. The lack of urgency is further reflected in the IRS's willingness to wait two years between requesting the documents from J.B. and P.B. in September 2013 and issuing the summons to the California Supreme Court in September 2015.

Moreover, the IRS should have known that it was requesting information from a particularly sensitive source. The IRS sent the summons to J.B.'s employer, not a remote third party like a bank or financial institution. A taxpayer's reputational interests is heightened when the IRS requests information from an employer, which knows the taxpayer intimately and upon which the taxpayer relies for decisions about hiring and firing, and promotion. And, the IRS did not just request this information from any employer. The IRS sought billing records and invoices for J.B.'s work representing capital defendants for the state government. The IRS should have known that these materials were potentially covered by the attorney-client privilege and other

litigation-related privileges, and could have revealed J.B.'s litigation strategy representing persons on death row. Issuing the summons without specifically notifying J.B. and P.B. is rendered even more unnecessary because the billing records and invoices that the IRS requested are exactly the type of records that the IRS should have expected J.B. to have in his possession, and to have readily been able to provide once the dispute as to whether J.B. and P.B. should have remained in the research audit was resolved. In fact, federal law requires J.B. and P.B. to maintain exactly those records. *See* I.R.C. § 6001 (requiring taxpayers to maintain income records).

We think there were several reasonable additional steps that the IRS could have taken to notify J.B. and P.B. before turning to the California Supreme Court. *See Jones*, 547 U.S. at 234. The ongoing litigation between J.B. and P.B., and the IRS, meant that IRS lawyers had opportunities to notify the couple that, despite the litigation, it would begin contacting third parties to collect information that J.B. and P.B. continued to withhold. Another reasonable step would have been for the IRS to, once again, renew its request for documents, and tell J.B. and P.B. that, if the documents were not provided, it would begin reaching out to third parties. Because more than two years had elapsed between the date the IRS sent Publication 1 to the couple, and the date the IRS issued its summons to the California Supreme Court, it is not unreasonable to expect the IRS to renew its request for documents and to remind J.B. and P.B. that if they did not comply, the IRS would begin contacting third parties. Other reasonable notice measures, directed at the possibility that J.B. and P.B. did not understand or remember the third-party contacts notice in Publication 1, would have been to re-mail Publication 1, call the taxpayer, or issue a more tailored letter indicating that the IRS would begin contacting third parties.

But, because the IRS took no additional steps to notify J.B. and P.B. that it would be sending a summons to the California Supreme Court, we affirm the district court's conclusion that issuing Publication 1 two years before the third-party contact did not satisfy I.R.C. § 7602(c)(1)'s "reasonable notice in advance" requirement in this instance.

## IV.

The IRS must comply with its statutory obligation to provide reasonable notice in advance of contacting third parties. Courts are not in the position to prescribe the exact form of notice that is reasonable in every circumstance. Under the circumstances here, however, reliance on Publication 1 was plainly unreasonable, and there are no doubt numerous other circumstances where the IRS needs to take further steps to provide the reasonable and meaningful notice Congress mandated. When the IRS seeks information from an employer of a party with whom it is currently in litigation and much of the information sought is covered by common law and state-recognized privileges, additional reasonable measures must be taken to provide meaningful notice and an opportunity to respond, in order to avert the potential third-party contact.

The district court's order quashing the 2011 summons to the California Supreme Court is therefore **AFFIRMED**.

# APPENDIX A

Case 4:15-cv-04764-YGR Document 10-2 Filed 11/09/15 Page 10 of 45



**IRS**
Department of the Treasury
Internal Revenue Service
**Publication 1**
(Rev. May 2005)
Catalog Number 64731W
www.irs.gov

# Your Rights as a Taxpayer

*The first part of this publication explains some of your most important rights as a taxpayer. The second part explains the examination, appeal, collection, and refund processes. This publication is also available in Spanish.*

## Declaration of Taxpayer Rights

### I. Protection of Your Rights

IRS employees will explain and protect your rights as a taxpayer throughout your contact with us.

### II. Privacy and Confidentiality

The IRS will not disclose to anyone the information you give us, except as authorized by law. You have the right to know why we are asking you for information, how we will use it, and what happens if you do not provide requested information.

**THE IRS MISSION**

*PROVIDE AMERICA'S TAXPAYERS TOP QUALITY SERVICE BY HELPING THEM UNDERSTAND AND MEET THEIR TAX RESPONSIBILITIES AND BY APPLYING THE TAX LAW WITH INTEGRITY AND FAIRNESS TO ALL.*

### III. Professional and Courteous Service

If you believe that an IRS employee has not treated you in a professional, fair, and courteous manner, you should tell that employee's supervisor. If the supervisor's response is not satisfactory, you should write to the IRS director for your area or the center where you file your return.

### IV. Representation

You may either represent yourself or, with proper written authorization, have someone else represent you in your place. Your representative must be a person allowed to practice before the IRS, such as an attorney, certified public accountant, or enrolled agent. If you are in an interview and ask to consult such a person, then we must stop and reschedule the interview in most cases.

You can have someone accompany you at an interview. You may make sound recordings of any meetings with our examination, appeal, or collection personnel, provided you tell us in writing 10 days before the meeting.

### V. Payment of Only the Correct Amount of Tax

You are responsible for paying only the correct amount of tax due under the law—no more, no less. If you cannot pay all of your tax when it is due, you may be able to make monthly installment payments.

### VI. Help With Unresolved Tax Problems

The Taxpayer Advocate Service can help you if you have tried unsuccessfully to resolve a problem with the IRS. Your local Taxpayer Advocate can offer you special help if you have a significant hardship as a result of a tax problem. For more information, call toll free 1-877-777-4778 (1-800-829-4059 for TTY/TDD) or write to the Taxpayer Advocate at the IRS office that last contacted you.

### VII. Appeals and Judicial Review

If you disagree with us about the amount of your tax liability or certain collection actions, you have the right to ask the Appeals Office to review your case. You may also ask a court to review your case.

### VIII. Relief From Certain Penalties and Interest

The IRS will waive penalties when allowed by law if you can show you acted reasonably and in good faith or relied on the incorrect advice of an IRS employee. We will waive interest that is the result of certain errors or delays caused by an IRS employee.

Case 4:15-cv-04764-YGR   Document 10-2   Filed 11/09/15   Page 11 of 45

# Examinations, Appeals, Collections, and Refunds

## Examinations (Audits)

We accept most taxpayers' returns as filed. If we inquire about your return or select it for examination, it does not suggest that you are dishonest. The inquiry or examination may or may not result in more tax. We may close your case without change; or, you may receive a refund.

The process of selecting a return for examination usually begins in one of two ways. First, we use computer programs to identify returns that may have incorrect amounts. These programs may be based on information returns, such as Forms 1099 and W-2, on studies of past examinations, or on certain issues identified by compliance projects. Second, we use information from outside sources that indicates that a return may have incorrect amounts. These sources may include newspapers, public records, and individuals. If we determine that the information is accurate and reliable, we may use it to select a return for examination.

Publication 556, Examination of Returns, Appeal Rights, and Claims for Refund, explains the rules and procedures that we follow in examinations. The following sections give an overview of how we conduct examinations.

### By Mail

We handle many examinations and inquiries by mail. We will send you a letter with either a request for more information or a reason why we believe a change to your return may be needed. You can respond by mail or you can request a personal interview with an examiner. If you mail us the requested information or provide an explanation, we may or may not agree with you, and we will explain the reasons for any changes. Please do not hesitate to write to us about anything you do not understand.

### By Interview

If we notify you that we will conduct your examination through a personal interview, or you request such an interview, you have the right to ask that the examination take place at a reasonable time and place that is convenient for both you and the IRS. If our examiner proposes any changes to your return, he or she will explain the reasons for the changes. If you do not agree with these changes, you can meet with the examiner's supervisor.

### Repeat Examinations

If we examined your return for the same items in either of the 2 previous years and proposed no change to your tax liability, please contact us as soon as possible so we can see if we should discontinue the examination.

## Appeals

If you do not agree with the examiner's proposed changes, you can appeal them to the Appeals Office of IRS. Most differences can be settled without expensive and time-consuming court trials. Your appeal rights are explained in detail in both Publication 5, Your Appeal Rights and How To Prepare a Protest If You Don't Agree, and Publication 556, Examination of Returns, Appeal Rights, and Claims for Refund.

If you do not wish to use the Appeals Office or disagree with its findings, you may be able to take your case to the U.S. Tax Court, U.S. Court of Federal Claims, or the U.S. District Court where you live. If you take your case to court, the IRS will have the burden of proving certain facts if you kept adequate records to show your tax liability, cooperated with the IRS, and meet certain other conditions. If the court agrees with you on most issues in your case and finds that our position was largely unjustified, you may be able to recover some of your administrative and litigation costs. You will not be eligible to recover these costs unless you tried to resolve your case administratively, including going through the appeals system, and you gave us the information necessary to resolve the case.

## Collections

Publication 594, The IRS Collection Process, explains your rights and responsibilities regarding payment of federal taxes. It describes:

- What to do when you owe taxes. It describes what to do if you get a tax bill and what to do if you think your bill is wrong. It also covers making installment payments, delaying collection action, and submitting an offer in compromise.

- IRS collection actions. It covers liens, releasing a lien, levies, releasing a levy, seizures and sales, and release of property.

Your collection appeal rights are explained in detail in Publication 1660, Collection Appeal Rights.

## Innocent Spouse Relief

Generally, both you and your spouse are each responsible for paying the full amount of tax, interest, and penalties due on your joint return. However, if you qualify for innocent spouse relief, you may be relieved of part or all of the joint liability. To request relief, you must file Form 8857, Request for Innocent Spouse Relief no later than 2 years after the date

on which the IRS first attempted to collect the tax from you. For example, the two-year period for filing your claim may start if the IRS applies your tax refund from one year to the taxes that you and your spouse owe for another year. For more information on innocent spouse relief, see Publication 971, Innocent Spouse Relief, and Form 8857.

## Potential Third Party Contacts

Generally, the IRS will deal directly with you or your duly authorized representative. However, we sometimes talk with other persons if we need information that you have been unable to provide, or to verify information we have received. If we do contact other persons, such as a neighbor, bank, employer, or employees, we will generally need to tell them limited information, such as your name. The law prohibits us from disclosing any more information than is necessary to obtain or verify the information we are seeking. Our need to contact other persons may continue as long as there is activity in your case. If we do contact other persons, you have a right to request a list of those contacted.

## Refunds

You may file a claim for refund if you think you paid too much tax. You must generally file the claim within 3 years from the date you filed your original return or 2 years from the date you paid the tax, whichever is later. The law generally provides for interest on your refund if it is not paid within 45 days of the date you filed your return or claim for refund. Publication 556, Examination of Returns, Appeal Rights, and Claims for Refund, has more information on refunds.

If you were due a refund but you did not file a return, you generally must file your return within 3 years from the date the return was due (including extensions) to get that refund.

## Tax Information

The IRS provides the following sources for forms, publications, and additional information.

- **Tax Questions:** 1–800–829–1040 (1–800–829–4059 for TTY/TDD)
- **Forms and Publications:** 1–800–829–3676 (1–800–829–4059 for TTY/TDD)
- **Internet:** www.irs.gov
- **Small Business Ombudsman:** A small business entity can participate in the regulatory process and comment on enforcement actions of IRS by calling 1-888-REG-FAIR.
- **Treasury Inspector General for Tax Administration:** You can confidentially report misconduct, waste, fraud, or abuse by an IRS employee by calling 1–800–366–4484 (1–800–877–8339 for TTY/TDD). You can remain anonymous.

 Printed on recycled paper